BAMBU SALES, INC., Plaintiff–Appellee,

v.

OZAK TRADING INCORPORATED
and Doron Gratch, Defendants–
Appellants.

No. 602, Docket 93–7913.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1995.

Decided June 26, 1995.

Gerard F. Dunne, New York City for defendants-appellants.

Henry Pitman, Lieberman & Nowak, New York City (Milton Springut, of counsel) for plaintiff-appellee.

Before: FEINBERG, MESKILL, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Bambu Sales, Inc. imports and sells cigarette rolling paper under its federally registered trademark, BAMBU. Ozak Trading Inc. imports and distributes brand-name goods, "off-brand-name" goods, and "closeouts."

Bambu's foreign manufacturer had some surplus stock of "light-weight" paper bearing the BAMBU mark. Bambu had discontinued the sale of such paper in the United States, but it permitted the manufacturer to sell it on the condition that the manufacturer document shipment to the Nigerian buyer. Some time later, Bambu learned that the light-weight paper was being sold in the United States, in packaging that lacked the "light-weight" designation.

Ozak was in the distribution chain that brought the light-weight paper into the United States. Bambu sued Ozak and its president in the United States District Court for the Southern District of New York (Shirley Wohl Kram, *Judge*), asserting three claims: (1) trademark infringement in violation of 15 U.S.C. § 1114(1); (2) false designation of origin and false descriptions and representations, in violation of 15 U.S.C. § 1125(a); and (3) trademark infringement and unfair competition under the common law of New York.

The district court referred the matter to a magistrate judge to supervise discovery and to make certain recommendations. After defendants violated a discovery order, and in light of other acts of delay and obstruction spanning more than one year, the magistrate judge recommended entry of a default judgment pursuant to Fed.R.Civ.P. 37. Accepting that recommendation, the district court entered a default judgment against defendants, and referred the matter back to the magistrate judge for an inquest on damages. The magistrate judge recommended that judgment be entered against defendants for $264,982.12. The district court adopted this recommendation too.

The district court also permitted Bambu to move for summary judgment on the issue of liability. Relying on the reasoning in an unpublished opinion in a companion case, *Bambu Sales Inc. v. Inter–American Distributors, Inc. and Bernard Silverfarb*, Docket No. CV–90–0596 (E.D.N.Y. Oct. 21, 1992) (Dennis R. Hurley, *Judge*), the district court granted summary judgment to Bambu against both defendants.

On appeal, defendants challenge (1) the default judgment; (2) summary judgment in favor of the plaintiff; and (3) the damages award. For the reasons that follow, we affirm the default judgment and the damages award, and find it unnecessary to reach the summary judgment issue.

## BACKGROUND

Bambu Sales, Inc. imports and sells cigarette rolling paper under its federally registered trademark, BAMBU. The paper is manufactured for Bambu in Spain by Miguel y Costas & Miguel, S.A. ("MCM"). MCM also manufactures "booklets" for Bambu. Booklets are small cardboard folders, roughly the size of a matchbook, in which the cigarette papers are packaged and sold.

Ozak Trading Inc. imports and distributes brand-name goods, "off-brand-name" goods, and "closeouts." Doron Gratch is its president.

In 1986, Bambu began marketing regular size, "light-weight" cigarette paper in the United States, in booklets declaring that the paper was light-weight. The paper did not

sell well and was the subject of customer complaints. Accordingly, Bambu discontinued selling it in the United States in 1988.

In 1989, MCM informed Bambu that it still had left-over regular size, light-weight paper in stock. MCM asked for permission to sell the paper to a buyer in Nigeria. For a commission, Bambu approved the sale, but only on condition that MCM document shipment to Nigeria. According to Bambu, there was little risk that the paper would make its way from Nigeria to the United States because it bore the BAMBU trademark, which is on the United States Customs Service restricted list. Goods on the list are not permitted entry into the United States without the trademark holder's consent.

Early in 1990, Bambu began to get complaints about the quality of its "regular size" cigarette paper. Bambu learned that lightweight paper was being sold in the United States without its authorization in regular size booklets that were not labelled "lightweight." Bambu discovered that Ozak was in the distribution chain importing the paper into the United States. Ozak had purchased the paper from a British company, and then sold it to wholesale companies in the United States.

*Lower court proceedings*

Bambu filed suit in the United States District Court for the Southern District of New York, asserting three claims against Ozak and Gratch, its president. Count I alleged trademark infringement in violation of 15 U.S.C. § 1114(1); Count II alleged a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (false designation of origin and false descriptions and representations); and Count III alleged trademark infringement and unfair competition under the common law of New York. Judge Kram referred the matter to Magistrate Judge Barbara A. Lee to supervise discovery and to make certain recommendations.

Discovery turned out to be a Stalingrad battle. Pursuant to a stipulation of the parties, Bambu first took the deposition of Gratch on March 14, 1990. At that deposition, and in a separate document request, Bambu called for the production of documents related to Ozak's purchase and sale of Bambu cigarette paper. Fifteen months later, in June, 1991, Ozak still had not produced the documents.

Ozak also failed to produce documents and interrogatory answers regarding prior acts of trademark infringement. Although its refusal was based, in part, on claims of privilege, Ozak never provided an index of the withheld documents as required by Rule 46(e) of the Civil Rules for the Southern District of New York. In addition, during the continuation of Gratch's deposition in February, 1991, Gratch refused to answer numerous questions on the ground of relevancy, a violation of federal and local court rules. *See, e.g., Johnson v. Schmidt,* No. CV-89-0531, 1992 WL 135237, at *1, 1992 U.S. Dist. LEXIS 8342, at *1 (E.D.N.Y. May 28, 1992).

After further acrimony, Bambu filed a motion to compel production of documents and answers to interrogatories, and to compel the continued deposition of Gratch. Responding to the motion, defendants also sought an order compelling discovery. In an August 30, 1991 order, Magistrate Judge Lee granted Bambu's motion "in all respects," adding that "[c]ompliance with local Civil Rule 46 is not optional" and "[a] deponent may not refuse to answer a question on grounds other than privilege." The magistrate judge denied defendants' discovery motion, and awarded Bambu attorneys' fees. Defendants never sought review of this order.

Several weeks passed with no effort by defendants to comply with the August 30 order. Accordingly, Bambu moved for a default judgment under Fed.R.Civ.P. 37. Opposing the motion, defendants' attorney stated in an affidavit that they were unable to comply because Gratch was stricken with a "grave illness." Defendants provided no details about Gratch's illness, nor did they submit any documentary evidence to support the claim (e.g., a statement from Gratch himself or his physician).

Gratch was finally deposed on February 5, 1992, while the Rule 37 motion was still pending. Two weeks later, on February 18, 1992, Magistrate Judge Lee issued a 16-page report recounting the lamentable history of defendants' obstinacy in resisting discovery.

The report concluded that (1) defendants had engaged in a pattern of "tactical obstruction"; (2) defendants had adequate notice that violation of the August 30 order could result in the entry of a default judgment; (3) "any sanction short of a default judgment would permit the recalcitrant parties to benefit from their tactical obstruction"; and (4) another discovery order would only multiply the proceedings. Accordingly, she recommended that a default judgment be entered against Ozak and Gratch.

Defendants filed objections to the report. Judge Kram indicated that she had reviewed the objections *de novo,* stating that

> In their objections to the Magistrate Judge's Report and Recommendation, defendants' principal contention is that Doron Gratch was too ill during September and October 1991 to comply with the Court's August 30, 1991 order. The Court finds, however, that defendants' submissions do not establish this fact.

Accordingly, Judge Kram granted Bambu's motion for a default judgment, and referred the matter back to Magistrate Judge Lee for an inquest on damages.

The only witness to testify at the inquest was Doron Gratch, who was called by both Bambu and defendants. In addition to Gratch's testimony, Bambu offered proof of the volume of Ozak's sales, proof that defendants took no steps to verify the authenticity of the paper before purchasing it, and that defendants, by virtue of their involvement in prior "gray goods" litigation, were aware of the potential problems when brand-name merchandise is purchased from an off-shore source. Evidence at the inquest proved that Ozak sold an aggregate of 13,570 boxes of the light-weight cigarette paper for total proceeds of $178,388.40.

Defendants attempted to prove deductible costs. Although they offered numerous *bills,* defendants offered virtually no evidence that the bills had actually been paid, other than Gratch's oral testimony.

Magistrate Judge Lee filed a report finding that "Gratch's testimony at the inquest was evasive, argumentative and ... in material respects irreconcilable with his deposition testimony in this case." She concluded that "Gratch's testimony was self-contradictory and totally unworthy of belief." She deducted only $9,180.28 in customs duties and letter of credit fees that were supported by proof of payment, allowing no deductions for costs supported only by Gratch's testimony. Accordingly, she recommended that judgment be entered against defendants in the amount of $264,982.12, consisting of $169,208.12 in damages ($178,388.40 − $9,180.28) and $95,774.00 in attorney's fees. Judge Kram adopted this recommendation.

The district court also permitted Bambu to move for summary judgment on the issue of liability. Relying on the reasoning in an unpublished opinion in a companion case, *Bambu Sales Inc. v. Inter–American Distributors, Inc. and Bernard Silverfarb,* Docket No. CV–90–0596 (E.D.N.Y. Oct. 21, 1992), the court granted summary judgment to Bambu against both defendants.

On appeal, defendants challenge (1) the default judgment; (2) summary judgment against them on the issue of liability; and (3) the damages and attorneys' fees award.

### DISCUSSION

#### I. *Default judgment*

■ This Court reviews a district court's entry of a default judgment for abuse of discretion. *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir.1989). Moreover, we have repeatedly warned of the consequences of non-compliance with discovery orders. *See, e.g., Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 73 (2d Cir.1988).

■ In her report recommending the default judgment, Magistrate Judge Lee addressed defendants' fault, the adequacy of notice, and the efficacy of lesser sanctions. With regard to fault, the magistrate judge found that defendants' excuse for failing to comply with the August 30 order was the alleged heart attack of Gratch. She noted, however, that when Gratch purportedly fell ill, defendants failed to seek relief from the discovery order, nor did they explain that failure. She also recounted one year's doleful history of unexplained failures to comply

with discovery requests before Gratch's purported illness.

With respect to adequacy of notice, the magistrate judge, relying on *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 688 (2d Cir.1989) and *United States Freight Co. v. Penn. Central Transportation Co.*, 716 F.2d 954, 955 (2d Cir.1983), held that Bambu's motion seeking a default judgment constituted adequate notice to defendants. Finally, the magistrate judge found that a lesser sanction would be ineffective because: the withheld information, peculiarly within the knowledge of defendants, was necessary for Bambu to prove its case; a further discovery order would only multiply the pre-trial proceedings in a case that should have gone to trial more than one year earlier; and "any sanction short of a default judgment would permit the recalcitrant parties to benefit from their tactical obstruction."

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), Judge Kram indicated that she had reviewed *de novo* the contested portions of the magistrate's report—principally that Doron Gratch was too ill to comply with the August 30 order. She held that "defendants' submissions do not establish this fact," presumably because defendants failed to submit a statement from any doctor that Gratch had actually suffered a heart attack, much less that his activities were restricted after August 30. Instead, defendants relied on unenlightening medical bills and affirmations from Gratch and his attorney. Nor did defendants explain why they failed to seek relief from the August 30 order. Accordingly, Judge Kram granted the motion for a default judgment under Fed.R.Civ.P. 37(b)(2)(C). Defendants contend that entry of the default judgment constituted an abuse of discretion. Their arguments are meritless.

First, defendants emphasize that Gratch was deposed on February 5, 1992, which was two weeks before the date of the magistrate's report (February 18, 1992). Defendants fail to explain, however, why they should be permitted to ignore the discovery order for five months, instead of promptly complying with it. In addition, they have yet to proffer any explanation for their failure to seek relief

from the discovery order. The conclusion is inescapable that they were deliberately obstructing the proceedings.

Second, defendants cavil that the August 30 order failed to specify a doomsday date by which Gratch was to be deposed and document production completed. Like any court order, however, the August 30 order plainly contemplated prompt compliance, particularly in light of the full year of delays and obstruction that preceded the order. Submitting to a deposition five months after the court's order, and then only under the threat of a default judgment, is something less than prompt compliance.

Third, defendants argue that they did produce the documents called for by the August 30 order. The facts, however, are to the contrary. For example, Bambu's first request for production of documents, served in March, 1990, requested

> All documents relating, referring, substantiating or proving the costs incurred by defendant in connection with the acquisition, and sale or distribution of each item including, but not limited to, cigarette paper, featuring or displaying any of the Bambu Trademarks.

At the inquest on damages, however, Gratch himself admitted that computer records showing receivables, payables, sales, and returns were never produced.

Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed. "A party who flouts such orders does so at his peril." *Update Art*, 843 F.2d at 73. Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost. We have no intention of letting them return to the table. "If one suggests that our decision today is strong medicine, that is precisely what it is intended to be." *Id.* This is not the first time such potent medicine has been prescribed. *See, e.g., National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (per curiam) (refusal for 17 months to answer "crucial" interrogatories); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980) (doing "absolutely

nothing at all" to comply with court orders to pursue discovery and prepare case for trial); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.1979) (refusal for three years to comply with specific court orders to answer interrogatories on damages); *Independent Investor Protective League v. Touche Ross & Co.*, 25 F.R.Serv.2d 222 (2d Cir.1978) (failing for many months to comply with repeated court orders to answer critical interrogatories).

## II. *Summary judgment*

■ There is no question that a default judgment establishes liability. *See, e.g., Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) ("[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability."). The district court, however, took the unusual step of awarding summary judgment to Bambu. According to Bambu, this was done to avoid a remand in the event we were to overturn the default judgment. Because we are affirming the default judgment, we decline to address the lower court's fall-back position on summary judgment.

## III. *Damages*

Defendants argue that the award of damages and attorneys' fees was error because there was insufficient evidence of willfulness. They further challenge the district court's finding with respect to deductible expenses.

### (1) *Willfulness*

■ "[A] plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). A district court's determination of willfulness is reviewed for clear error. *Harrison v. Grobe*, 984 F.2d 594, 595–96 (2d Cir.1993).

■ The record in this case amply supports the finding that defendants acted willfully. In his inquest testimony, which bristled with assertions of memory lapses, Gratch admitted that he took no steps to verify the authenticity of the paper before purchasing it, never asked if the company from which he acquired the paper was authorized to distribute it, and never asked where the company got the paper. In addition, he admitted that he never checked with Bambu to determine if the paper was genuine. Gratch also could not recall whether, before purchasing it, he had verified that the paper was identical to that sold in the United States. Defendants continued to sell the paper even after Bambu filed suit. Finally, defendants had been sued in a similar trademark infringement case in the past. Accordingly, the district court, relying on the magistrate's report, committed no error in finding willfulness.

■ The finding of willfulness determines the right to attorneys' fees. Under section 35 of the Lanham Act a court may award attorneys' fees in "exceptional" circumstances. 15 U.S.C. § 1117(a). "Exceptional" circumstances include willful infringement. *See, e.g., Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir.1992) (relying on Senate Report of § 1117(a)).

### (2) *Deductible expenses*

■ "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

To prove costs, defendants relied solely on the testimony of Gratch, along with a smattering of bills. Gratch claimed to have reviewed computer printouts showing that the contested deductible expenses were paid. He failed to produce these printouts, however, testifying that his computer was "off line." Nor did he produce any of the documents routinely used to prove expenses (e.g., cancelled checks). In addition, defendants have failed, to this day, to explain why they produced no documentary proof of bill payment. The district court therefore acted well within its discretion in determining that Gratch's testimony was "of no probative value," and in refusing to deduct expenses that were not proven by documentary evidence.

## CONCLUSION

We have considered all of defendants' remaining arguments, and find them to be without merit. The decision of the district court is affirmed in all respects except as to the grant of summary judgment, an issue we do not reach.