In re Nance HUTTER, Debtor.

Richard COAN, Trustee, Plaintiff,

v.

Gerhard P. HUTTER, Defendant.

No. 94–52227.

Adv. No. 96–5049.

United States Bankruptcy Court,
D. Connecticut.

April 30, 1997.

Timothy D. Miltenberger, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Plaintiff.

Daniel Shepro, Janine M. Becker, Willinger, Shepro, Tower & Bucci, P.C., Bridgeport, CT, for Defendant.

Nance Hutter, Greenwich, CT, pro se.

## MEMORANDUM AND ORDER ON TRUSTEE'S MOTION FOR JUDGMENT AND IMPOSITION OF SANCTIONS UNDER RULE 7037 F.R.BANKR.P.; DEBTOR'S MOTION FOR APPOINTMENT OF PRO BONO COUNSEL; DEBTOR'S MOTIONS FOR CONTINUANCE; DEBTOR'S OBJECTION TO CLAIM; AND SANCTIONS AGAINST DEBTOR UNDER RULE 9011 F.R.BANKR.P.

ALAN H.W. SHIFF, Chief Judge.

The matters addressed here are but the latest in a long series of coordinated attempts by the debtor and her husband, Gerhard Hutter (the "defendant") to hinder and delay their secured creditors in the Connecticut court system, and then, when the Connecticut Supreme Court denied their petition for certification, they continued those efforts in this court by repeated attempts to obstruct the bankruptcy process. The following matters are considered together because to a large extent they share a common background.

The trustee commenced the instant adversary proceeding, seeking authority to sell the defendant's co-owned interest in property under § 363(h). He now moves for judgment under Rule 7037 F.R.Bankr.P. as a sanction against the defendant. Other matters relate to the debtor's objection to the claim of a secured creditor, her motion for the appointment of a *pro bono* attorney, and her motions for a continuance of the hearing on her objection. Finally, the court addresses, *sua sponte*, the imposition of sanctions against the debtor under Rule 9011(a) F.R.Bankr.P. for filing a motion to reconvert her case to chapter 13.

### COMMON BACKGROUND

The defendant and the debtor share a residence at 993 Lake Avenue, Greenwich, Connecticut ("Property"). They are joint obligors on the debts secured by that Property. On June 30, 1986, they granted a first mortgage in the principal amount of $500,000.00 to Putnam Trust Company of Greenwich ("Putnam"). On May 8, 1989, they granted a second mortgage in the principal amount of

$484,000.00 to Household Realty Corporation ("Household"). The Hutters defaulted on both mortgages. They have not made payments to Putnam since September, 1991, and as of December 12, 1994, the date of the commencement of this case, they owed Putnam $624,231.79, with interest accruing daily at the rate of $113.91. Similarly, they have made no payments to Household since September, 1991, and as of December 12, 1994, they owed Household $656,881.93, with interest accruing daily at the rate of $251.49. The Hutters have not paid real estate taxes to the Town of Greenwich, Connecticut since 1990.

On June 1, 1992, Putnam commenced a foreclosure action in the Connecticut Superior Court at Stamford which entered a judgment of foreclosure on February 8, 1993 and set July 10 as the sale date. Between June 24, 1993 and May 3, 1994, the Hutters moved to reopen the judgment of foreclosure on four separate occasions, and four new sale dates were ordered. The Hutters' fifth motion to reopen was denied on May 9, and a sale date of June 4 was set. On May 31, they appealed. On June 4, the sale proceeded, and Household was the successful bidder. On June 6, the Hutters filed a motion for review of the denial of the fifth motion to reopen, and on June 22, they filed an amended appeal. On July 20, 1994, the Connecticut Appellate Court dismissed the appeal and amended appeal and determined that no ruling was necessary on the motion for review. On July 29, the Hutters filed a motion for reconsideration, which was denied on September 8, 1994. *See February 25, 1997 Joint Summary of Proceedings* at 2–4; *February 3, 1995 Joint Motion to Dismiss* at 1–4. On September 26, the Hutters petitioned the Connecticut Supreme Court for certification, which was denied on November 3, 1994. *Putnam Trust Co. of Greenwich v. Hutter,* 231 Conn. 935, 650 A.2d 172 (1994). On December 12, 1994, the debtor filed a *pro se* chapter 13 petition, which stayed any further activity in the state court action, *see* 11 U.S.C. § 362(a).

On January 27, 1995, Putnam filed a proof of claim which was amended on July 18, 1995 and again on December 26, 1995 to state a secured claim of $753,739.11. On July 18, 1995, Household filed a proof of claim to state its secured claim of $866,392.96. On March 23, 1995, the Town of Greenwich filed a proof of its tax claim which was amended on December 20, 1995 to state a claim of $45,899.75.

The debtor retained an attorney on March 7, 1995. On March 8, 1995, she filed a motion to convert her case to chapter 11, *see* § 1307(d), because she had too much secured debt to be eligible for chapter 13 relief, *see* § 109(e).[1] The motion was granted during an April 13 hearing, and a corresponding order entered on May 18 which stated that if the debtor did not file a disclosure statement and plan by May 15, 1995, any interested party could file an "appropriate order converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code, which Order shall be granted by the court without further notice or hearing." *See May 18, 1995 Order* at 3. On May 11, the debtor terminated the employment of her attorney, and on May 15, she filed a *pro se* motion for an extension of time within which to substitute another attorney and file a plan. Also on May 15, notwithstanding the debtor's termination of his employment, the debtor's attorney filed a disclosure statement and plan which were repudiated by the debtor on May 22. On July 17, the debtor, Putnam, and Household entered into a stipulation which was "so ordered" on July 28 and required the debtor, *inter alia,* (1) to provide proof of fire and extended casualty insurance coverage on the Property and file such proof with the court by July 21, 1995; and (2) to make adequate protection payments by July 21, 1995 of $7,971.00 to Household and $3,894.00 to Putnam. As a consequence of the debtor's failure to comply with both of those conditions, the case was converted under § 1112(b) to chapter 7 on August 30, 1995.

---

1. Code § 109(e) provides:
   Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of

   less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 ... may be a debtor under chapter 13 of this title. 11 U.S.C. § 109(e) (West 1997).

## I

### MOTION FOR JUDGMENT

On May 3, 1996, the trustee commenced this adversary proceeding under § 363(h) [2] to sell the Property free and clear of the defendant's co-ownership interest. On May 8, notice was sent to the parties that trial was scheduled for August 14. On August 8, the defendant filed a motion for a continuance until September because his real estate appraiser was not available on the trial date. The trustee objected. On August 13, the defendant filed a *pro se* motion to dismiss the adversary proceeding, contending that the Hutters' real estate had been abandoned by the debtor's December 7, 1995 discharge. The motion was denied on August 14, and the trial date was continued to September 11, 1996. At a status conference on that date, the parties stipulated that the sole issue for trial was whether "the benefit to the estate of a sale of [the Property] free of the interests of [the defendant] outweighs the detriment, if any, to [the defendant]." *See* § 363(h)(3).[3] The defendant was represented by counsel at the status conference. The trial was continued a second time to October 9. On that date, the trial was continued a third time to November 27 because of a report that the defendant had been taken to the Greenwich Hospital emergency room. Pursuant to this court's direction that the defendant provide evidence of his medical condition, the defendant submitted a partially legible October 8, 1996 report from Emergency Medical Services which included:

Pt is to follow-up with Dr. Blumberg within one week. His BP needs to be monitored and his medication need[s] adjustment, this will be done as an outpatient. He is to return if he has any signs of chest pains or light headedness.

On October 30, 1996, the defendant filed a motion to continue the November 27 trial date because it conflicted with his attorney's vacation plans. The motion also alleged that he had been advised by his doctor not to proceed with the trial. The motion was denied at a November 19 hearing, provided, however, that if the defendant submitted medical evidence which warranted a further continuance, the order would be reconsidered. On November 26, the defendant renewed his motion for a continuance supported by a November 22 letter from Dr. Blumberg, which stated:

Mr. Gerhard Hutter is under my professional care. He has recently diagnosed hypertension. His blood pressure has been somewhat difficult to control. Stress and stressful situations are clearly aggravating this problem and making it even more difficult to control his blood pressure. I would ask that he be excused from any stressful activities until I can bring his blood pressure under better control.

On that basis, the trial was continued a fourth time to January 10, 1997.

On November 27, 1996, the court entered two discovery orders. One permitted the trustee to depose the defendant and Dr. Blumberg. The other, entered under Rule

---

**2.** Code § 363(h) provides:
... [T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
(1) partition in kind of such property among the estate and such co-owners is impracticable;
(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.
11 U.S.C. § 363(h) (West 1993).

**3.** On June 11, 1996, the trustee filed a motion for summary judgment which the defendant opposed. In effect, the defendant was unwilling to concede that there were no genuine issues of material fact as to the elements of § 363(h), e.g., that the Property was "not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power." *See* § 363(h)(4). On the September 11 trial date, the trustee requested a hearing on his motion. During the status conference, the defendant conceded that the only disputed issue was § 363(h)(3).

35 F.R.Civ.P., made applicable by Rule 7035 F.R.Bankr.P., ordered "Gerhard Hutter [to] appear at the office of Dr. Prescott Wiske ... New Haven, Connecticut on December 13, 1996 at 1:00 p.m. for his physical examination ...". The defendant did not appear for his medical examination "due to his weakened condition," and, without leave of court, rescheduled his appointment to January 3, 1997. *See December 20, 1996 Motion for Judgment as a Sanction for Failure to Obey an Order Allowing for Discovery, Exh. B.* He also failed to appear for his December 19, 1996 deposition.

On December 20, 1996, the trustee filed the instant motion for judgment as a sanction against the defendant for failing to comply with the November 27 discovery orders. A hearing was scheduled for January 10, 1997. On January 3, the defendant's attorney wrote to the trustee that the defendant canceled his appointment with Dr. Wiske, scheduled for that day:

Mr. Hutter advised that he set out to the doctor's appointment but then became ill. He has an appointment with his doctor this afternoon, and I have requested that he provide a written report from his doctor.

By letter dated January 9, 1997, the defendant informed the court that on January 3, 1997, he experienced "sever [sic] health problems (loss of vision in my left eye)," which "prevented him from driving to Dr. Wiske's office." He further stated that he saw Dr. Blumberg's partner, Dr. Maher, on that day because Dr. Blumberg was on vacation, he notified Dr. Wiske of his "inability to attend," he was scheduled to see a neurologist on January 9 at 4:30 p.m., and his health is deteriorating.

At the January 10, 1997 hearing, the court again ordered the defendant to submit to a physical examination by Dr. Wiske and be deposed. *January 10, 1997 Tr.* at 9. The court specifically notified the defendant's attorney in open court that if the defendant failed to be examined and deposed, a judgment might enter against him. *Id.* On January 22, 1997, an order entered which required the defendant to submit to an examination by Dr. Wiske on January 28, 1997 at 2:15 p.m., and to appear for a deposition at the trustee's offices on February 6, 1997 at 3:00 p.m. The following decretal provision was included:

This Order on Trustee's Motion for Judgment as a Sanction For Failure to Obey an Order Allowing for Discover shall serve as A NOTICE TO THE DEFENDANT MR. GERHARD HUTTER THAT A FAILURE TO APPEAR AND BE EXAMINED BY DR. PRESCOTT WISKE ON JANUARY 28, 1997 ..., OR A FAILURE TO APPEAR AND BE DEPOSED UNDER FED.R.BANKR. 7030 ON FEBRUARY 6, 1997 ..., MAY RESULT IN THE ENTRY OF A DEFAULT JUDGMENT AGAINST HIM.[4]

*January 22, 1997 Order* at 2. The defendant did not go to Dr. Wiske's office on January 28, and on January 29, the trustee requested an expedited hearing on his motion for judgment.

The defendant did not attend the February 3 hearing at which the trustee recounted the defendant's repeated failure to appear for his deposition or his physical examination or even to seek relief from the orders that required him to do so. The defendant's attorney offered the defendant's January 31, 1997 affidavit which stated that he was taken to an emergency room on October 9, 1996, due to "chest pain and light-headedness," he was informed he had "extremely high blood pressure," he had been under the treatment of Dr. Blumberg "since that time," and he was "to avoid stress and stressful situations"

---

**4.** Arguably, it was not necessary for this court to specifically notify the defendant of the potential consequence of default should he fail to comply with the January 22, 1997 discovery order, because the trustee's motion that sought that sanction served as adequate notice. *See Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852–53 (2d Cir.1995), *citing Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 688 (2nd Cir.1989) (court's entry of orders and holding of hearing on sanctions sufficient); *United States Freight Co. v. Penn Central Transportation Co.,* 716 F.2d 954, 955 (2nd Cir.1983) (sanctioned party's notice of court's discovery order and opportunity to argue against sanction sufficient). Moreover, this court provided the defendant with prior notice at the January 10 hearing that his failure to submit to a physical examination and be deposed might result in the entry of a default judgment against him.

per Dr. Blumberg's instructions. The affidavit further stated that he had "not been able to avoid stress," his "condition continues to worsen," he has been "physically unable" to comply with the orders of this court, and he had to be taken to a hospital in Greenwich on January 28, 1997. The debtor stated that she thought the defendant had only seen Dr. Blumberg three times since October 8, 1996. In response to an inquiry from the court, the defendant's attorney acknowledged that no records from Dr. Blumberg had been offered and that she neither had nor requested authorization from the defendant to procure those records.

The January 28 Greenwich Hospital Emergency Department Record disclosed an admission at 6:05 p.m. and a discharge at 7:10 p.m., a history of "tunnel vision," "chest pressure," "hypertension," and dizziness, and the prescription of medication. The defendant's attorney also submitted a February 3 letter from Dr. Stanley W. Dziedzic:

To whom it may concern:
RE: Gerhard Hutter
Mr. Hutter is under my care for multiple medical problems ie. labile hypertension, visual disturbances and severe headaches. The patient has been advised to remain at bedrest and will be seen for follow-up on February 18, 1997. . . .

On February 6, 1997, the defendant filed a motion for a continuance of the deposition scheduled for that date until after February 18, 1997 because he had "been advised to remain at bedrest until a follow-up appointment with Dr. Stanley W. Dziedzic, a treating physician." The trustee's objection was sustained. At the April 21 hearing on the instant motion, the trustee sought judgment, attorney's fees, and costs as a sanction against the defendant.

### DISCUSSION

Rule 37(b)(2)(C) F.R.Civ.P., made applicable to bankruptcy by Rule 7037 F.R.Bankr. P., provides:

Sanctions by Court in Which Action is Pending. If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35 . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C) An order . . . rendering a judgment by default against the disobedient party;

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

28 U.S.C.Rule 37(b)(2)(C) (West 1992). The United States Supreme Court stated in *Insurance Corp. of.Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106–07, 72 L.Ed.2d 492 (1982) that "Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Those sanctions are contemplated "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), *reh'g denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). *See also Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71–73 (2d Cir.1988) ("Compliance is necessary to the integrity of our judicial process"). "[A]ll litigants, including pro ses, have an obligation to comply with court orders." *Baba v. Japan Travel Bureau International, Inc.,* 111 F.3d 2, 5 (2d Cir.1997). When they flout that obligation they, like all litigants, "must suffer the consequences of their actions." *Id.; see also Bambu Sales, Inc. v. Ozak Trading, Inc.,* 58 F.3d 849, 853 (2nd Cir.1995). Further, while the court may consider alternative sanctions less severe than default judgments, "[t]he mere availabil-

ity of softer sanctions ... does not bar a court from imposing the default sanction." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989).

■ Although a genuine medical emergency may excuse a party from compliance with a court order, it is incumbent upon that party to establish the severity of the medical condition. *See, e.g., Chuang Investments v. Eagle Inns, Inc.*, 81 F.3d 13, 14 (1st Cir.1996) (a party's repeated failures to be deposed due to asserted medical reasons coupled with his failure to provide documentary medical evidence warranted the entry of default judgment); *United States v. DeFrantz*, 708 F.2d 310, 311–12 (7th Cir.1983) (a defendant's failure to provide documentary medical evidence explaining repeated failures to be deposed combined with his failure to reschedule the deposition warranted the entry of default judgment).

■ The defendant claims that he was too ill to travel on January 28, 1997 from Greenwich to New Haven to be examined by a cardiologist so that his claims of cardiac disability could be tested. The documentation of that claim is inadequate. Indeed it appears from the Greenwich Hospital record on that date that his only examination and treatment was in the emergency room to which he was admitted and discharged in 65 minutes. The hospital record also discloses that he failed to renew a prescription for a drug prescribed at the hospital on Dr. Blumberg's orders and instead decided on his own to substitute a medication that had previously been prescribed. Apparently, the defendant not only flouts this court's orders but also those of his treating physician.

The credibility of the defendant's claim that he was too ill to travel to a New Haven cardiologist on January 28 is further undermined by the fact that he was able to travel approximately the same distance to New York City to be examined by Dr. Dziedzic on February 3. The only support for the defendant's medical claim is Dr. Dzeidzic's February 3 "to whom it may concern" note that he should "remain at bed rest." That note does not warrant the conclusion that the defendant was too ill to travel on December 13, January 3 (when he rescheduled the appointment), or January 28.

It may well be that the defendant had an elevated blood pressure. It is not unlikely that he was anxious about the prospect that the bubble, on which he and the debtor rest their hope of indefinitely delaying the sale of the Property, might be about to burst. The defendant's failure to obey the orders of this court supports the trustee's argument that he is attempting to impede the administration of this case by deferring the payment of debts owed to a taxing authority since 1990 and secured creditors since 1991. That explanation is buttressed by the observation that the onset of the defendant's alleged symptoms routinely coincided with the dates of court ordered medical examinations. He simply declined to attend and then offered the excuse that he was too ill to travel. Accordingly, judgment will enter in favor of the trustee.[5]

---

5. It is noted that a § 363(h)(3) analysis on the merits would likely also result in judgment against the defendant. As this court previously stated:

An analysis under § 363(h)(3) requires the consideration of both *economic* factors, such as the valuation of the non-debtor spouse's interest, available tax exemptions, etc., and *non-economic* factors, including the prospects for acquiring a new home, handicaps, and the existence of minor children.

*Coan v. Bernier (In re Bernier)*, 176 B.R. 976, 980 (Bankr.D.Conn.1995) (emphasis added), *citing Community Bank and Trust Co. of New York v. Persky (In re Persky)*, 893 F.2d 15, 21 (2d Cir. 1989).

The defendant has primarily asserted economic objections to the sale of the Property, *see, e.g., Objection to Motion for Summary Judgment.*

However, his economic position will be the same after a § 363(h) sale *as it was before*, because § 363(i) and (j) assure the defendant that his economic interest in the Property is protected. Subsection (i) would grant him a right of first refusal to purchase the Property. Subsection (j) would provide for a distribution of one half of the net proceeds from the sale.

The defendant's sole asserted non-economic detriment, the maintenance of a residence for his minor children, carries little weight in the balance between his rights and those of the trustee. Simply put, the defendant's desire to provide a multi million dollar home for his children at the expense of a distribution to the debtor's creditors does not equate. If this court accepts the debtor's value of the Property, *see February 12, 1997 Debtor's Appraisal*, the defendant's share of the net proceeds of the sale would provide approxi-

## Attorney's Fees

■ At the April 21, 1997 hearing on the trustee's instant motion, he submitted a statement seeking attorney's fees and costs under Rule 37(b)(2). The record, however, does not reflect that an order entered which authorized the retention of the trustee's attorney under § 327. Accordingly, the trustee's application for attorney's fees and costs is denied without prejudice.

## Other Sanctions

■ Bankruptcy courts have the same inherent sanction authority as district courts. *Ngan Gung Restaurant, Inc. v. Official Committee of Unsecured Creditors (In re Ngan Gung Restaurant, Inc.)*, 195 B.R. 593, 598–99 (S.D.N.Y.1996). When parties or their attorneys needlessly burden the court by their conduct, a sanction imposing a penalty payable to the court is appropriate. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) ("[parties] and their attorneys face penalties under various provisions [including Rule 9011] for engaging in improper conduct in bankruptcy proceedings"); *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir.1991), *cert. denied sub nom., Cemco Inc. v. Newman*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) (upholding bankruptcy court's sanction against attorney for reasserting arguments made in numerous other pleadings); *In re Slaughter*, 191 B.R. 135, 143–44 (Bankr.W.D.Wis.1995) (imposing Rule 9011(a) sanctions on attorney for filing frivolous objection to creditor's motion to dismiss debtor's chapter 13 case). *See also In re Peia*, 145 B.R. 749, 753 (Bankr.D.Conn.1992); *Putnam Trust Co. of Greenwich v. Frenz (In re Frenz)*, 142 B.R. 611, 615 (Bankr.D.Conn. 1992). It is intended that such a penalty serves the purpose of compensating the court, punishing the wrongdoer, and deterring others from similarly burdening the

court. *In re Slaughter, supra*, 191 B.R. at 143. The defendant's blatant defiance of this court's discovery orders and the corresponding abuse of the bankruptcy process warrants the imposition of a sanction. Accordingly, the judgment will include an order that the defendant pay $2,500.00.

## II

## DEBTOR'S OBJECTION TO CLAIM, APPLICATION FOR PRO BONO ATTORNEY, AND MOTIONS FOR CONTINUANCE

On January 27, 1995, Putnam filed a proof of claim which was amended on July 18, 1995 and again on December 26, 1995 to state a secured claim of $753,739.11. *See* § 501(a). On October 1, 1996, the debtor filed a *pro se* objection to that claim to which Putnam filed an October 4 response. A hearing was scheduled for February 5, 1997, and notice was sent to the debtor on October 11. On February 4, the debtor filed a motion for a continuance and requested the appointment of a *pro bono* attorney because "the Debtor is unable to pay for her own legal representation." A blank Application for Appointment of Attorney ("Application"), furnished by the court, was attached to her request, which was returned with the direction that she provide the requested information. The debtor did not appear at the February 5 hearing, and it was continued to February 14, 1997 over the objections of the trustee and Putnam.

At the February 14 hearing, the debtor presented a completed Application. She repeated her argument that she could not adequately present her objection to Putnam's claim without assistance of counsel and requested a continuance until she could proceed with counsel. The debtor's Application was not approved, and her request for a continuance was denied.[6] The debtor there-

---

mately $500,000.00, *see infra* at 990. That sum should be sufficient for an adequate down payment on a residence for his family.

On the other hand, the trustee has stated on the record that the sale of the Property will yield $75,000.00 to the estate for payment of unsecured claims. Therefore, the benefit to the estate of the sale of the Property would likely outweigh

any detriment that the defendant may suffer. Had the defendant, who shares the Property with his wife and children, joined her in this bankruptcy case, this issue would never have arisen.

**6.** On February 24, the debtor filed an interlocutory appeal with the Bankruptcy Appellate Panel, challenging this court's denial of her motions for a continuance and appointment of *pro bono*

upon rested her case without offering evidence or arguing her objection. As the trustee and Putnam rose to address the court, the debtor slumped in her chair which suggested the onset of a medical emergency. She was removed from the court and transported by ambulance to a local hospital, and the hearing was continued to February 20, 1997. On February 19, the debtor filed a letter in which she renewed her request for a continuance, this time on the basis of a cardiac condition. A letter from Dr. Dziedzic was attached.

Putnam rested without offering any evidence at the February 20 hearing. The debtor did not attend, and the court took the debtor's objection to Putnam's claim under advisement. The trustee, Household, and Putnam were provided an opportunity to file a joint statement summarizing the proceedings, and the debtor was given an opportunity to file a written response. The joint statement was filed on February 25. The debtor's March 10 response "strenuously and vehemently" objected to the February 20 hearing, but, as noted, the court merely took the matter under advisement on that date.

## DISCUSSION

### Collateral Estoppel

█ As this court stated in *Federal Deposit Insurance Corporation v. Roberti (In re Roberti)* (hereinafter "*Roberti II*"):

... the full faith and credit doctrine, codified at 28 U.S.C. § 1738, requires a federal court to give preclusive effect to a state court judgment whenever the state in which the federal court sits would do so. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). *See also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 [105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274] (1984); *Burka v. New York City Transit Authority,* 32 F.3d 654, 657 (2d Cir.1994);

*Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007 [108 S.Ct. 701, 98 L.Ed.2d 652] (1988); *Roberti I,* ... [183 B.R. 991, 999 (Bankr. D.Conn.1995) ]; *Tavella v. Edwards (In re Edwards),* 172 B.R. 505, 521–522 (Bankr. D.Conn.1994). Under Connecticut law, "collateral estoppel applies to an issue that was actually litigated and necessarily determined in a prior action between the same parties on a different claim." *Roberti I, supra* at 1001; *see also Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 714 [627 A.2d 374] (1993). An issue is " 'necessarily determined' if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.* at 714– 15; *Roberti I, supra* at 1001 (internal quotations and citations omitted). "Actual litigation under Connecticut law requires a 'full and fair opportunity to litigate.' " *Id.* at 1002.

*Roberti II,* 201 B.R. 614, 618 (Bankr.D.Conn. 1996), *appeal pending,* No. 3:96CV02389 (D.Conn. November 27, 1996).[7]

The record is silent as to whether the state court judgment was entered upon default, but even if it were, that would not eliminate the applicability of collateral estoppel here. The Connecticut Supreme Court has stated:

Although not every default judgment should have the same preclusive effect as an actual adjudication between the present parties, in the interest of judicial economy and repose for litigants, *we envision some circumstances where it would be appropriate to give issue preclusive effect to a default judgment.* We have previously noted, after addressing the scope of issue ... preclusion, that the appropriate inquiry ... is whether the party had an "*adequate opportunity to litigate the matter in the earlier proceeding ...*" *State v. Ellis,* ... [197 Conn. 436,] 464–65 n. 22 [497 A.2d 974 (1985) ], quoting D. Currie, "Res Judicata: The Neglected Defense," 45 U.Chi.

---

counsel, although no order to that effect had yet entered. On April 4, 1997, she filed a motion for stay pending appeal with this court. On April 8, she filed an emergency motion for a stay pending appeal and for protective order with the Bankruptcy Appellate Panel. On April 11, the Bankruptcy Appellate Panel denied her emergency motion for stay and for protective order. Her

motion for stay pending appeal was denied by this court's April 30, 1997 order.

7. None of the exceptions to the application of collateral estoppel noted in *Roberti II, supra,* 201 B.R. at 618 n. 3, are applicable here.

L.Rev. 317, 342 (1978). Our decision in *Ellis* indicates that *had there been a full and fair opportunity to litigate issues and such issues were necessary to a default judgment, that judgment should put to rest subsequent litigation of all issues necessary for the rendering of the default judgment.*

*Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 717–718, 627 A.2d 374 (1993) (emphasis added). *See also Roberti II, supra,* 201 B.R. at 619; *1 Restatement (Second), Judgments § 27, comment (e)* (1982) ("It is true that it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate").

Putnam's claim in this court was the subject of a foreclosure action it commenced on June 1, 1992 against the Hutters in state court. On February 8, 1993, the state court entered a foreclosure judgment against them and set July 10 as the sale date. On May 9, 1994, after the court granted four motions to reopen the judgment and set four new sale dates, the Hutters' fifth motion to reopen was denied and a sale date of June 4 was set. On that date, Household was the successful bidder. The Hutters' filed several appeals between May 31, 1994 and July 29, 1994 and were unsuccessful each time. On November 3, 1994, the Supreme Court of Connecticut denied their petition for certification. *Putnam Trust of Greenwich v. Hutter, supra,* 231 Conn. at 935, 650 A.2d 172. Approximately 5 weeks later, having exhausted all efforts to reverse the state court ordered sale of the Property to satisfy the Putnam and Household debts, the debtor came to this court and renewed those efforts. Thus, it is apparent that the Hutters had a full and fair opportunity in the state court to contest Putnam's mortgage which is the subject of Putnam's claim here, and the debtor's attempt to relitigate that issue is prohibited by collateral estoppel. The conclusion that the debtor's objection should be overruled is also reached without reliance on collateral estoppel.

### Objection to Claim

■ Putnam filed an amended proof of claim on December 26, 1995 to state a se-cured claim of $753,739.11, *see* § 501(a). Section 502 provides in relevant part: "(a) A claim ..., proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." As this court held in *In re White,* 168 B.R. 825, 828–29 (Bankr.D.Conn.1994):

> The plain language of the code and rules states that a properly executed and filed proof of claim is allowed unless objected to by a party in interest. If there is such an objection that raises factual issues "the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case." *In re G. Marine Diesel Corp.,* 155 B.R. 851, 853 (Bankr.E.D.N.Y.1993). *Cf. S.E.C. v. Unifund SAL,* 910 F.2d 1028, 1037 (2d Cir. 1990)̇ ("*'Prima facie case'* has a clear meaning: evidence of an amount and quality sufficient to send a case to the trier of fact."). The objecting party may not rebut the prima facie case merely by stating that the amount of [the claim] is not correct.... [The] evidence must have probative force at least equal to that of the proof of claim.... *see Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.),* 993 F.2d 915, 925 (1st Cir. [1993], *cert. denied,* [510] U.S. [914, 114 S.Ct. 303, 126 L.Ed.2d 251] (1993)....

*Id.* Since the debtor did not offer any evidence, she did not rebut Putnam's prima facie case, and her objection to its claim will be overruled.

### *Appointment of Pro Bono Attorney*

■ As noted *supra* at 988, the debtor presented an Application to the court at the February 14 hearing. Question H(c) asked for "the amount of money and/or a description of the property [you have a right to demand or receive]?" She responded, "Trustee holding my ½ interest in equity which is approx. $500,000, based upon the total equity of $1,000,000." She described her property as a "single family home—colonial on 4 acres w/pool." Her answer to question J(b) was that the approximate present value of that home was "$1,000,000. Current appraisal" after deducting the current balance on all mortgages and other liens on

the property. She answered question N, "Trustee has my estate, and I have no access to the equity over and above all claims." The Application also contains the following statement: "I hereby waive my privilege of attorney/client confidentiality to the extent necessary for my appointed attorney to make an application to be relieved from appointment as provided in District Court Local Rule 29(c) and (d)." [8] *See* Rule 1(b) Local Rules of Bankruptcy Procedure. The debtor struck that language from her Application.[9]

Since collateral estoppel precluded the relitigation of Putnam's claim, the debtor did not need the appointment of a *pro bono* attorney to prosecute her objection. That aside, it is clear from the disclosures in her Application that she did not qualify. The appointment of a *pro bono* attorney to a person who claims that the market value of her equity interest in property is $500,000.00 would be a travesty. This court's *pro bono* program is intended to assist indigent debtors, not those who live in million dollar homes with a pool on four acres of suburban

land. Her claim that the trustee is in control of the Property is unavailing since that is so in all chapter 7 cases. *See* § 541; *see also In re Fitzgerald*, 167 B.R. 689, 692 (Bankr. N.D.Ga.1994) (denying appointment of counsel to chapter 7 debtor who failed to articulate claims, identify issues, or demonstrate exceptional circumstances).

There has been no showing that the debtor's husband, who has a co-ownership interest in the Property and who has employed a law firm in an attempt to block its sale under § 363(h), could not fund a retainer for an attorney. Perhaps some of the money that was saved since 1990 and 1991, when the last tax and mortgage payments were made, could be used.[10] The credibility of the debtor's claim that she could not afford the services of an attorney is eroded by the fact that for a brief period during her chapter 13 and then her chapter 11 case, she did employ an attorney.[11] *See supra* at 983. Moreover, eligibility does not guarantee such an appointment as there is a greater demand than

**8.** District Court Local Rule 29 provides in relevant part:

(c)(2): If the appointed attorney reasonably perceives the potential applicability of any of the grounds enumerated in subparagraph (d)1(v) of this Rule 29, the attorney shall, before discussing the merits of the case with the client, advise the client of the provisions of Rule 29(d)1(v). Where the attorney did not perceive such prior to discussing the merits of the case with the client, the attorney may request the client to execute a limited waiver of the attorney-client privilege permitting the attorney to disclose under seal to the Court information relevant to the applicability of Rule 29(d)1(v). The waiver should indicate that the application for relief will be a privileged Court document, and may not be used in the litigation. The client's refusal to execute a waiver shall not preclude the attorney from applying for relief.

(d)(1)(v): ... Absent an appearance of new counsel, an appointed attorney may apply to be relieved of an appointment only on the following grounds: ... the party appears to be proceeding for purposes of harassment or malicious injury, or the party's claims or defenses are not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law; (v) for other good cause shown.

**9.** The debtor claimed that she deleted the waiver language because she did not understand what it

meant. It was noted by the court at the February 14 hearing that that assertion was dubious. *February 14, 1997 Tr.* at 41–42.

**10.** On the basis of the documents on file relating to the Hutters' mortgage obligation to Putnam and Household, it is apparent that they have saved hundreds of thousands of dollars by not making loan payments since 1991. Just considering the 1986 adjustable rate mortgage held by Putnam, the Hutters were required to make monthly payments of $3,844.57, based upon an initial interest rate of 8.5%. Without taking into account interest rate variations, that monthly payment multiplied by the 67 months of nonpayment equals a savings of $257,586.19. It is likely that the Hutters saved a comparable amount by not making payments to Household. The money they saved by not paying taxes to the Town of Greenwich since 1990 and the compounding effect of interest on all of the unspent money have not been calculated.

**11.** On May 15, 1995, the attorney filed a chapter 11 plan and a disclosure statement which listed a projected administrative expense of $25,000.00 for legal services. It is unknown whether the debtor was consulted about that projected expense, but nonetheless, it is fair to infer that the attorney did not expect to offer free legal services. Moreover, it is fair to infer that when the debtor hired the attorney, she conveyed the impression that she would pay for those services.

supply of attorneys who have agreed to participate in this court's *pro bono* program.

**Motions for Continuance**

■ At the February 14, 1997 hearing on the debtor's October 1, 1996 objection to the Putnam proof of claim, *see supra* at 988–989, the debtor asserted that she could not properly present her objections to Putnam's claim without the assistance of counsel and orally requested a continuance. As with her Application, the debtor's request for a continuance so that she could obtain the assistance of counsel again begs the question: what was left for her counsel to do? It is also observed that the debtor had over 3 months to prepare herself for the hearing. Indeed, since she and the defendant had spent over 2 years in the state courts challenging the same claim, the protest that she needs more time is unpersuasive.

The interruption of the February 14 hearing, occasioned by the debtor's sudden onset of "heart palpitations," *see February 14, 1997 Tr. at 14,* resulted in a continuance to February 20. The debtor has objected to that continuance, but as noted *supra* at 989, Putnam rested without the offer of any evidence, and the debtor's objection was taken under advisement. The motions for continuance will be denied.

## III

### THE DEBTOR'S MOTION TO CONVERT AND CONSEQUENT SANCTIONS

On February 3, 1995, Putnam and Household filed a joint motion to dismiss the chapter 13 case because the amount of their allowed secured claims exceeded the eligibility restrictions provided under § 109(e). That motion was buttressed by the debtor's February 27 *pro se* amendment to Schedule D which listed secured debts of $965,546.31. On that date, she also filed an objection to the dismissal motion and a notice of her intention to retain an attorney. On March 7, 1995, her attorney filed an "Affirmation of Proposed Attorney Pursuant to Rule 2014" ("Affirmation"), stating:

> It is my judgement that the debtor, *pro se,* filed her case under the wrong chapter of the Bankruptcy Code. There is a severe

question as to her eligibility under Section 109 of the statutory criteria set forth in Section 109 of the Bankruptcy Code. She is obviously eligible under chapter 11 of the Code, which is where her case belongs.

*Affirmation,* ¶ 9. On March 8, 1995, the debtor filed a Motion to Convert Chapter 13 Case to Chapter 11 Case, *see* § 1307(d), stating:

> It appears that the debtor, *pro se,* made the elementary mistake made by most debtors who choose to represent themselves: She chose the wrong chapter, erroneously guided thereto by one or more self-help books generally available to individuals contemplating a bankruptcy filing....

*See Debtor's Motion to Convert* at 2–3.

The debtor was permitted to convert by an April 13 order which provided that if a disclosure statement and plan were not filed by May 15, 1995, the case would be converted to chapter 7 "without further notice or hearing." The debtor terminated the employment of her attorney by a letter dated May 11, 1995. She did not adopt the plan he filed on May 15. Instead, she requested an extension of time to file a plan.

On August 30, 1995, the chapter 11 case was converted to chapter 7 under § 1112(b), which provides in pertinent part:

> ... [O]n request of a party in interest ..., and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title ... for cause, including—(4) failure to propose a plan under section 1121 of this title within any time fixed by the court....

11 U.S.C. § 1112(b)(4) (West 1997). On January 6, 1997, the debtor signed and filed a motion to convert to chapter 13 in which she stated:

> In view of ... the debtor's understanding that recent precedent provided an absolute right for the debtor to convert to Chapter 13, the debtor therefore moves the court to convert her case to Chapter 13.

On January 10, 1997, the trustee filed an objection to the motion contending that the debtor was ineligible for chapter 13 under § 109(e), but more to the point, the debtor

was prohibited by § 706(a) from converting to chapter 13. The debtor failed to appear at the January 21 hearing scheduled by a January 10 order to show cause, and the court, *sua sponte*, entered a second order to show cause why the debtor should not be sanctioned under Rule 9011(a) F.R.Bankr.P., for filing the conversion motion and scheduled a hearing for February 3.

## DISCUSSION

Rule 9011(a) F.R.Bankr.P. provides in pertinent part:

> ... A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of ... a party constitutes a certificate that the ... party has read the document; that to the best of the ... party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it ... an appropriate sanction, which may include an order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

11 U.S.C. Rule 9011(a) (West 1997).

It is well settled that Rule 9011(a) and Rule 11 F.R.Civ.P., on which it is based, *see Baker v. Latham Sparrowbush Associates (Matter of Cohoes Industrial Terminal, Inc.)*, 931 F.2d 222, 227 (2nd Cir.1991), imposes an *objective* standard of what is a reasonable inquiry. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 549, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991) (upholding sanction of attorney's fees and costs imposed against a signing represented party); *O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir.1996). It is further noted that Rule 9011 sanctions apply to parties proceeding *pro se. Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., supra* at 549, 111 S.Ct. at 932.

The debtor offered a series of unpersuasive arguments, including her claim that she was only responsible for half of the secured debt, so she was within the eligibility levels of § 109(e).[12] She also claimed that she filed the motion to convert "at the suggestion of the Debtor's husband's attorney ... [who] sent [her] ... [a case summary appearing in *Connecticut Opinions* of] Italiano v. Rosenbaum, US District Court Docket No. 3:94CV 1090 ... as precedent that the Debtor has an 'automatic right' [to convert her case]" and that "therefore the Debtor has no reason to believe that she [does not have that] right." *See February 3, 1997 Objection to Objection of Richard M. Coan Trustee to Motion to Convert Chapter 7 Case to Chapter 13*, at 16.

The debtor's reliance on *Italiano v. Rosenbaum* is misplaced. The issue presented in that case was whether a debtor had a right to convert his chapter 7 case to a case under chapter 13 following the entry of a chapter 7 discharge. The District Court did not hold that there was a right of conversion. The court merely stated that "the bankruptcy court should not have vacated [its earlier] order converting the case to Chapter 13, *absent a finding that Chapter 13 was not appropriate for this case.*" No. 3:94cv1090, at 5 (D.Conn. Nov. 27, 1996) (emphasis added). Nothing in *Italiano* suggests that un-

---

**12.** The Hutters signed the June 30, 1986 Putnam adjustable rate note which incorporated the following language:

> **9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
> If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.... The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

The Hutters also signed the May 8, 1989 Household mortgage which contained similar language.

der the facts presented here, i.e., the case had been converted under § 1112 to chapter 7, that the debtor had an "automatic" or indeed any right to convert to chapter 13.

Further, § 706(a) provides:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, *if the case has not been converted under section 1112, 1208, or 1307 of this title* . . . .

11 U.S.C. § 706(a) (West 1997) (emphasis added). Thus, even if the debtor had been eligible under § 109(e), the plain language of § 706(a) eliminated her asserted right to convert her chapter 7 case to a case under 13 because on August 30, 1995, it had been converted under § 1112. *See In re Vitti*, 132 B.R. 229, 230 (Bankr.D.Conn.1991) (citations and internal quotation marks omitted) ("The legislative history of § 706(a) provides that it gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already been once converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right . . .").

Moreover, the debtor's asserted ignorance of the law lacks candor. Her extensive experience in state court belies any such conclusion as does her performance in this court. She is clearly intelligent enough to read § 706(a) and understand its plain language that having had her case converted to chapter 7 under § 1112, she cannot reconvert it to chapter 13.

### Attorney's Fees

It is clear from the record of this case that the debtor's motion to convert was intended to serve the same purpose as her unwarranted motions for a continuance and her request for a *pro bono* attorney, namely to "cause unnecessary delay" and to cause "needless increase in the cost of . . . administration of [this bankruptcy] case." Rule 9011(a) is intended to discourage such conduct.

On April 16, 1997, the trustee submitted an application for attorney's fees and expenses related to the debtor's violation of Rule 9011(a). As noted *supra* at 988, the record is silent on any authorization under § 327. Ac-

cordingly, the trustee's application is denied without prejudice.

### Other Sanctions

■ As noted *supra* at 988, this court has the authority to sanction parties who needlessly burden the court by imposing a penalty payable to the court. *See In re Memorial Estates, Inc., supra*, 950 F.2d at 1370. The debtor's frivolous objection to Putnam's claim and related application for *pro bono* attorney and motions for a continuance have wasted many hours of court time. A sanction is warranted to penalize the debtor for abusing the bankruptcy process, to deter such conduct on her part in the future, and to deter others from similarly burdening the court. Accordingly, the Rule 9011(a) sanction will include an order that she pay $2,500.00.

### ORDER

IT IS ORDERED that the trustee's motion for judgment is granted.

IT IS FURTHER ORDERED that the trustee may sell the defendant's co-ownership interest in the Property under § 363(h);

IT IS FURTHER ORDERED that the trustee's application for attorney's fees and costs, as a sanction under Rule 7037 F.R.Bank.P., is denied without prejudice;

IT IS FURTHER ORDERED that the defendant shall pay the clerk of court $2,500.00, as a sanction under Rule 7037 F.R.Bank.P., no later than May 30, 1997;

IT IS FURTHER ORDERED that the debtor's objection to Putnam's claim is overruled;

IT IS FURTHER ORDERED that the debtor's motion for the appointment of a *pro bono* attorney is denied;

IT IS FURTHER ORDERED that the debtor's motions for a continuance are denied;

IT IS FURTHER ORDERED that the trustee's application for attorney's fees and costs, as a sanction under Rule 9011(a) F.R.Bank.P., is denied without prejudice; and

IT IS FURTHER ORDERED that the debtor shall pay the clerk of court $2,500.00, as a sanction under Rule 9011(a) F.R.Bank. P., no later than May 30, 1997.