Susan BABA, Plaintiff,

v.

**JAPAN TRAVEL BUREAU INTERNATIONAL, INC.,**
Defendant.

No. 94 Civ. 2171 (SS).

United States District Court,
S.D. New York.

March 13, 1996.

Susan Baba, New York City, Plaintiff Pro Se.

Whitman Breed Abbott & Morgan, New York City (William M. Sunkel, of counsel), for Defendant.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiff Susan Baba ("Baba") brings this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that she was fired from her job because of discrimination based on her sex and national origin. Defendant Japan Travel Bureau International, Inc. ("JTBI") moves to dismiss this action pursuant to Fed.R.Civ.P. 37 for Baba's repeated refusal to comply with the court's discovery orders. For the reasons discussed below, defendant's motion is

**GRANTED** and plaintiff's Complaint is **DIS-MISSED** with prejudice.

## BACKGROUND

Plaintiff Susan Baba is a Japanese–American with a fluent command of English. For one month, from November 27, 1991 to December 28, 1991, she worked as a tour escort for defendant Japan Travel Bureau International, Inc. ("JTBI"). In December of 1991, after Baba had completed a tour to the United States' southwest region, JTBI terminated Baba's contract. The primary reason for Baba's dismissal, according to JTBI, was that numerous customers had complained about Baba's performance as tour escort on the one tour she had conducted for JTBI.

On March 25, 1994, Baba filed a Complaint in this court against JTBI, the New York State Division of Human Rights ("SDHR"), and the United States Equal Employment Opportunity Commission ("EEOC").[1] Baba invoked Title VII of the Civil Rights Act of 1964, alleging that she had been terminated because of discrimination on the basis of her sex and national origin.

JTBI denied Baba's allegations and, as an affirmative defense, contended that Baba had failed to state a claim under Title VII because she was not an "employee" of JTBI, but merely an independent contractor.[2]

At a pretrial conference on September 9, 1994, JTBI sought permission to file a motion for summary judgment, primarily on the basis of Baba's independent contractor status. I determined that limited discovery on this jurisdictional issue was warranted, to establish whether a general issue of fact existed on the question of plaintiff's employment status. In light of Baba's *pro se* status, I further directed JTBI to conduct its discovery and serve its summary judgment motion on Baba before Baba began to conduct her own discovery. I explained to Baba that this approach was an attempt to give her the greatest possible flexibility in shaping her own interrogatories. I told Baba that after JTBI had served her with a copy of its summary judgment motion, I would hold a conference with both parties and would discuss with Baba how she could best conduct her discovery to respond to JTBI's motion.

I set a December 30, 1994 deadline for JTBI to complete discovery on the employment status issue, and a January 15, 1995 deadline for JTBI to serve its summary judgment motion on Baba. I directed Baba not to serve her own discovery requests until JTBI had filed the summary judgment motion, and reminded her that we would discuss her discovery and her opposition to the motion at the next conference.

Over the next few months, JTBI served interrogatory and document requests on Baba. Baba's first set of answers was incomplete and JTBI requested further responses. Baba's second set of answers was equally evasive. She continued to refuse to identify certain witnesses, claiming that she had withheld their names "for the protection of their rights." She also continued to withhold certain requested documents, including her appointment book, claiming that these documents contained confidential information not relevant to the case. During the same period Baba violated my September 9, 1994, directive by serving JTBI with her own interrogatories and document requests.

On December 16, 1994, I extended the discovery deadline by written endorsement of defendant's December 15 letter to the Court. In the same memo endorsement, I addressed Baba directly: "Ms. Baba—you must and are ordered to identify witnesses. You must also produce all documents in your possession or control." (Memo Endorsement, December 16, 1994.) On January 18, 1995, JTBI informed me by letter that Baba had failed to produce the requested information and had again violated the terms of my discovery orders. Specifically, Baba had served JTBI with a Notice of Deposition purporting to

---

1. On January 27, 1995, I granted motions to dismiss from the SDHR and the EEOC pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for failure to state a claim upon which relief could be granted and lack of subject matter jurisdiction.

2. In evaluating Baba's administrative claims, the SDHR and the EEOC had determined that Baba lacked standing to pursue such claims because she was an independent contractor and not an employee.

schedule a deposition of JTBI for January 23, 1995.

By memo endorsement of defendant's January 18 letter, I stayed Baba's deposition notice, directed Baba to respond to JTBI's interrogatories by January 26, 1995, and warned Baba that she could be sanctioned with contempt of court if she failed to comply.

On January 27, 1995, I held another pretrial conference at which I again directed Baba not to serve any discovery requests on JTBI without my permission. (*See* Def.'s Letter to the Court, February 7, 1995.) I also warned Baba that if she failed to appear for her deposition, which was scheduled for February 21, 1995, the Court would impose sanctions on her, including an order of preclusion. (*Id.*)

Baba appeared for her scheduled deposition on February 21, but the session did not go well. On March 9, 1995, JTBI informed the Court by letter that Baba had refused to answer some of the deposition questions, had provided vague answers to other questions, had generally responded to questions in an argumentative and defensive manner, and had prevented completion of the deposition. In the letter, JTBI again sought an extension of time to complete discovery and to file its summary judgment motion.

I addressed the discovery dispute at the next conference on March 20, 1995. Among other matters, I explained to Baba that I understood her reluctance to hand over personal information to JTBI, and that I was only interested in the appointment entries that were related to her work for JTBI. I also gave Baba clear and explicit instructions about how to produce a redacted copy of the appointment book:

> THE COURT: What I want Miss Baba to do is to give me her original appointment book with a xerox copy that whites out the portions you want them [JTBI] not to see, and I will check the original to the copy to make sure that the copy is appropriate.

(Tr. of March 20, 1995, Conference at 3.)

I memorialized the substance of the March 20 conference by written Order dated March 22, 1995. The Order provided that my oral directives of March 20, "as contained in the transcript, are now written orders of the Court *which will subject the parties to sanctions if they are not complied with.*" (March 22, 1995 Order) (emphasis added).

On March 23, 1995, Baba produced her original appointment book to the Court for *in camera* inspection. I discovered that Baba had used white corrective fluid ("white-out") to conceal entries in the original document that concerned dates relevant to this litigation. On March 28, 1995, I called an emergency conference to discuss this latest violation of my orders. At this conference, JTBI requested that I entertain a motion to dismiss the complaint without waiting for further abuses, or alternatively:

> that the Court issue a written order specifically warning [Baba] that *any* further failure to comply with her discovery obligations; *any* further abuse of the discovery process; or *any* further violation of the Court's Orders, will result in the dismissal of the Complaint with prejudice under Rule 37.

(*See* Def.'s Letter of April 11, 1995.) I ordered a stay of Baba's deposition and scheduled a conference to discuss JTBI's request.

At the next conference, on May 4, 1995, I formally addressed the whiting-out incident. Baba claimed that she had misunderstood my directives about the whiting-out. I found her statement unconvincing, however, and said so.[3] Baba claimed that she was reluctant to turn over this evidence because of its great personal worth to her, and her fear of its being lost. I reminded her, however, that her permanent destruction of this same evidence was inconsistent with her claim of its importance to her. I also said that, from my extensive contact with Baba so far, I had found her English to be sufficient to understand my directive about the whiting-out. I concluded, therefore, that her decision to white-out the original was an intentional attempt to destroy potentially probative evidence. I stated that I was reluctant to im-

---

**3.** THE COURT: Ms. Baba, I accept that you are claiming that you misunderstood me. I am rejecting that claim. (Tr. of May 4, 1995 Conference at 4.)

pose the "extreme" sanction of dismissal as long as milder remedies were available, such as permitting JTBI to present Baba's conduct to the jury, but I also warned that I would not rule out the dismissal sanction entirely.[4] Finally, in light of Baba's evasive answers at her deposition session, I determined that another deposition session would be a "waste of [the Court's] time and [JTBI's] time." I therefore directed JTBI to complete its deposition by submitting written questions to Baba, and I instructed Baba to furnish a "complete, truthful" written response to JTBI's questions—with "no excuses"—by June 12, 1995.

Baba responded to the written deposition by the June 12 deadline, but did so in a manner that continued to violate my orders. She refused to answer some of JTBI's questions on the ground that they were "irrelevant to answer;" she also attached, as part of her written response, her own deposition questions to JTBI.

At the next pretrial conference, on July 7, 1995, I warned Baba several times that any further refusal to comply with my orders would have serious consequences:

THE COURT: You cannot continue to litigate this case or delay it by picking and choosing what you wish to answer and by ignoring the Court's orders. I have repeatedly told you. I may understand your frustration, but this litigation cannot proceed with you refusing to comply with discovery orders.

. . . .

Ms. Baba, *do what I have asked you to do or I am going to dismiss this action.* I am warning you. You cannot continue this course of ignoring my orders, of refusing to provide discovery, or being contemptuous and then demanding that what you want be done. That is not the manner in which litigation proceeds.

. . . .

Ms. Baba, I have told you my ruling. I have repeatedly warned you. Do not ignore my order. You do not have a legitimate ground to do so. You are threaten-

ing your case unnecessarily. Answer their questions, Ms. Baba.

(Tr. of July 7, 1995 Conference at 9–12) (emphasis added). Baba indicated, moreover, that she understood my instructions:

THE COURT: Answer the questions and we can get moving.

BABA: Yes.

THE COURT: Don't answer them—and I forewarn you, once again—and I am only doing it so the Second Circuit has a clear record: I am begging you to answer the questions. I do not want to dismiss your action. I truly want to get to the merits, but it is your willful intent not to have me do it when you refuse to follow my orders and demand instead that I do things the way you want. That's not the way to proceed, Ms. Baba. Follow my orders. Do what I am asking you to do, and let's get this case moving.

BABA: Yes. I understand, Your Honor.

(*Id.*) At the same conference, I held Baba in contempt of my March 22, 1995, Discovery Order, but stated that I was "once again giving [Baba] an opportunity to cure that contempt." (*Id.* at 21.) I warned Baba that "the next step will be the sanction step," and I specified that "any further violation of the Court's orders or abuse of discovery" could result in the "most drastic" sanction of dismissing her case. (*Id.*)

I summarized these directives in a written Order dated July 18, 1995, repeating my warning that:

Plaintiff's Complaint *will be dismissed with prejudice* if she engages in any further violation of any Order of this Court or engages in any further violation of her discovery obligations.

(July 18, 1995 Order at 1) (emphasis added). In the same Order, I set forth Baba's outstanding discovery obligations and the consequences of noncompliance as follows:

Plaintiff, no later than 12:00 noon on Friday, August 18, 1995, must serve by hand on counsel for [JTBI] her answers to Questions Nos. 1–7, 9, 11–19, and 21–26 of

---

**4.** I stated that I might entertain a motion to dismiss at some future date, "based on conduct or other facts that may come up later." (Tr. of May 4, 1995 Conference at 10.)

[JTBI's] Continued Deposition Upon Written Questions (the "Questions").…

If Plaintiff does not timely and fully comply with this Order by answering the Questions in full, [JTBI] may move to dismiss the Complaint with prejudice pursuant to Fed.R.Civ.P. 37 and any other applicable rules.…

(*Id.* at 1–2.)

Several weeks later, Baba filed a Complaint against JTBI in New York City Civil Court for breach of employment contract. She served JTBI not only with a copy of the Complaint, but with a Demand for Bill of Particulars which stated: "In the event of [JTBI's] failure to comply with the foregoing demand within 20 days after the date of delivery, JTBI's [written deposition questions] … will not to be answered [sic]," and JTBI's summary judgment motion will be "cancelled automatically."

Baba further violated my orders by failing to respond to JTBI's deposition questions by the August 18 deadline. To date, she still has not complied.

On August 10, 1995, Baba served JTBI with a motion seeking my recusal from the case, the withdrawal of JTBI's counsel, and the reconsideration of all of my prior Orders. JTBI filed an opposition memo on August 18, 1995. I denied Baba's motion on August 29, 1995.

JTBI filed the instant motion to dismiss on August 31, citing Baba's persistent and wilful disregard of my discovery orders. Baba did not attend the conference scheduled for September 29, 1995, and I granted her a one month extension to respond to the motion to dismiss. Baba filed an Affirmation in Opposition to the Motion to Dismiss on November 10, 1995, reiterating her view that her employment status does not bar her from asserting a Title VII claim, and stating that she is not required to respond to JTBI's discovery requests because its counsel has engaged in "scheme, trick, deceit and deception" during the discovery process.

## DISCUSSION

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides in pertinent part:

If a party … fails to obey an order to provide or permit discovery … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(C) An order … dismissing the action or proceeding.

The sanction of dismissal is the strongest sanction available to a judge. *See, e.g., Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1065 (2d Cir.1979) (Fed.R.Civ.P. 37 "provides a spectrum of sanctions. Harshest of all are orders of dismissal and default judgment.") The sanction's purpose is twofold: to penalize the offending party for its behavior, and to deter other litigants from engaging in similar behavior. *E.g., National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Cine Forty–Second Street*, 602 F.2d at 1066; *Zises v. Dep't of Social Servs.*, 112 F.R.D. 223 (E.D.N.Y.1986). The Second Circuit has often stated that a district court has broad discretion to apply any appropriate Rule 37 sanction to a recalcitrant party. *Cine Forty–Second Street* at 1063–64; *see also Update Art Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir.1988).

When the behavior to be sanctioned is the plaintiff's flouting of discovery orders, dismissal is appropriate only when the plaintiff's actions are due to "wilfulness, bad faith or any fault" of the party. *See Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 734 (2d Cir.1987); *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958)). Moreover, "all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 123 (2d Cir.1988).

Noncompliance with discovery orders is considered wilful when the court's orders have been clear, when the party has under-

stood them, and when the party's non-compliance is not due to factors beyond the party's control. *See Rogers,* 357 U.S. at 212–13, 78 S.Ct. at 1096; *Niagara,* 836 F.2d 731 (holding plaintiff's behavior to be wilful when plaintiff ignored his counsel's advice, refused to answer deposition questions, and obstructed progress on litigation that had been pending for seven years).

 Courts in the Second Circuit have consistently upheld the imposition of dismissal upon claimants proceeding pro se, as long as the trial court had issued sufficient warnings that noncompliance could result in dismissal. *Valentine v. Museum of Modern Art,* 29 F.3d 47, 49 (2d. Cir.1994). In *Valentine,* a pro se plaintiff flouted the district court's orders on repeated occasions, disrupted a deposition session, and failed to appear for two subsequent depositions. The Court of Appeals upheld dismissal of this case because, among other factors, the district judge had repeatedly warned the plaintiff that his noncompliance could result in dismissal. *See also Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 766 (2d Cir.1990) (affirming dismissal of pro se action because plaintiff had been warned that failure to appear for deposition could result in dismissal); *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir. 1990) (dismissal upheld for refusal to heed discovery orders on four separate occasions despite court's postponement of deadlines and repeated warnings); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d

at 124 (same); *Baker v. Ace Advertisers' Service, Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y. 1992) (same); *Dukes v. New York City Police Comm'r Ward,* 129 F.R.D. 478, 482 (S.D.N.Y. 1990) (same). Although pro se claimants have no more right than other litigants to ignore the orders of the court, they must at least be made aware of the legal consequences of their actions. *Bobal,* 916 F.2d at 764.

 In the instant case, Baba has refused to comply with my discovery orders on numerous occasions, and I find that her behavior was wilful. My orders were clear, Baba said that she understood them, and her compliance was fully within her control. As I repeatedly explained to Baba, she had an obligation to answer the deposition questions. (I even explained the manner in which she should respond.[5]) The deposition questions themselves were clear and straightforward, although Baba's responses were not.[6] As the discovery dispute wore on, my warnings to Baba became progressively more direct, and on several occasions I told her explicitly that she was courting dismissal.[7]

The core of this dispute, I find, was not a lack of understanding on Baba's part. It was the fact that she disagreed with my rulings. Baba strongly disagreed with my decision to organize discovery as I had, and she expressed this disagreement loudly and often. Baba believed that her independent contractor status with JTBI did not invalidate her

---

5. THE COURT: Don't fight with Ms. Alcorn. Answer those questions that can be answered yes or no. If you have an explanation that you don't think her yes or no questions permitted you, wait until the end of the deposition [and raise any objections with the Court]. In the interim, answer her questions. (Tr. of March 20, 1995, Conference at 15.)

6. A typically tortured exchange occurred during Baba's deposition session on February 21, 1995:
 Q. ... And the next question is, when you escorted this tour for JTBI, JTBI did not deduct any federal, state or local taxes from the money it paid you, correct?
 A. That's their responsibility.
 Q. Ms. Baba, it's a simple question. There were not taxes deducted from the money that JTBI paid you—
 A. When JTBI paid, JTBI had responsibility to pay whatever necessary to pay.

 Q. It's very simple question, and I would like a yes or no answer.
 A. That is correct, and it's correct that the JTBI failed to file a tax form, which should be JTBI's responsibility.
 Q. What tax form are you referring to, Ms. Baba?
 A. Whichever the tax forms would be. *I have contracted,* my contract starts from December 28, and my contract hasn't even executed. It's not done anything. They breached the contract.
 (Tr. of February 21, 1995 deposition session at 109–110.)

7. THE COURT: Plaintiff's Complaint will be dismissed with prejudice if she engages in any further violation of any Order of this Court or engages in any further violation of her discovery obligations. (July 18, 1995 Order.)

Title VII claim and that therefore discovery on the issue was irrelevant. JTBI maintained, however, that Baba's employment status was a threshold jurisdictional issue under Title VII. As I repeatedly explained to Baba, I could not stop JTBI from filing a summary judgment motion. I also explained to Baba why I had chosen to organize the case by developing the factual record first and addressing the legal arguments second. If Baba's legal arguments were correct, I assured her, the summary judgment motion would be decided in her favor and her case would proceed. If JTBI prevailed on the motion, however, and if the factual record established that she was an independent contractor, the case would be dismissed without further delay. I repeatedly emphasized that my discovery orders were intended to promote an expeditious decision on the jurisdictional issue. Baba's refusal to comply with those orders has prevented the case from progressing for more than a year.

As Baba's objections to discovery became increasingly entrenched, I took care to explain a related procedural point: that Baba was entitled to raise objections to orders or to discovery requests, and that I would hear those objections. In fact, I heard many such objections. I explained, however, that once I had ruled on an issue, Baba was required to comply with my orders. Instead, Baba chose to comply only with orders with which she agreed. This is not the way litigation proceeds, or can proceed. *See Zises*, 112 F.R.D. at 227 ("Disagreement with the court's discovery order is not a ground for non-compliance.") I addressed this issue explicitly and at length on July 7, 1995:

> THE COURT: I don't know what to do with you. I am at a loss as to how—and I'm making a record because *I truly don't know how to communicate to you in a way that will get past your willful refusal to listen.*
>
> *I do not find that you are incapable of understanding.* Your answers to the written depositions, your letters to me, your appearances before me make it very clear that whatever language limitation you have—and there is some—that it is not either significant or substantial enough to

make you incapable of understanding what I say, what I mean or what I intend. I truly find that what you are doing is willfully deciding what you want to do and what you don't want to do, and when you don't want to do something, you ignore me.

> *Unfortunately, Ms. Baba, you cannot ignore Court orders.* You cannot condition what you are going to do on what you want. Even though you are a pro se litigant, I know that you have filed other actions in State court. You have won some of these. You have filed more than one action in this court. You are not a one-time litigant. *You are an intelligent, apparently educated woman who knows what she can or cannot do, and you are choosing to ignore me.*

(Tr. of July 7, 1995 Conference at 2.)

I have shown Baba every consideration due a pro se plaintiff, and I have tried every step short of dismissal to induce her compliance. I have postponed deposition deadlines three times, and I have issued six separate warnings to Baba about the risks of violating court orders. Having concluded that Baba's violations were wilful and that they have brought this case to a standstill, I regretfully dismiss this case with prejudice.

## CONCLUSION

Baba has wilfully disregarded the discovery orders of this Court for more than a year. She has persisted in her behavior despite my repeated warnings that her actions could result in dismissal. For the foregoing reasons, defendant's motion to dismiss the Complaint is granted and the case is dismissed with prejudice.

**SO ORDERED.**