**AMERICAN CASH CARD CORP. and Amcash New York West Corp., Plaintiffs,**

v.

**AT&T CORP., Defendant.**

**AT&T Corp., Counterclaim–Plaintiff,**

v.

**American Cash Card Corp., Amcash New York West Corp., Victor Alves, and Raul Alves, Counterclaim–Defendants.**

**No. 95 Civ. 10607(DC).**

United States District Court, S.D. New York.

Feb. 10, 1999.

Handal & Morofsky, By Anthony H. Handal, Norwalk, Connecticut, for Amcash.

Sidley & Austin, By Elizabeth M. Sacksteder, New York City, Sharon O. Gans, Liberty Corner, New Jersey, for AT&T Corp.

### MEMORANDUM DECISION

CHIN, District Judge.

Defendant and counterclaim-plaintiff AT & T Corp. ("AT & T") moves for sanctions under Fed.R.Civ.P. 37. For the reasons that follow, the motion is granted.

### BACKGROUND

Plaintiffs American Cash Card Corp. and Amcash New York West Corp. commenced

this action against AT & T in December 1995 for breach of contract, breach of implied covenant of good faith, fraud, negligent misrepresentation, and violations of 47 U.S.C. § 201(a). The verified complaint alleged compensatory damages of "not less than $50 million" and punitive damages of "[not] less than $150 million." Plaintiffs complained that AT & T charged higher rates than promised and provided inadequate billing information and defective software.

AT & T filed an amended answer denying the allegations and asserting counterclaims against plaintiffs and their principals, Victor Alves and Raul Alves (collectively "Amcash"), alleging that Amcash had failed to pay tariff charges for telephone service.

Discovery commenced, but Amcash repeatedly failed to comply with its discovery obligations. On May 28, 1996, AT & T served Amcash with document requests and interrogatories. Amcash failed to respond. As a result, AT & T wrote a letter to the Court and on August 13, 1996 the Court issued an order providing as follows:

> Amcash shall respond to or object to AT & T's discovery requests by August 26, 1996. Failure to respond or object by that date will result in sanctions pursuant to Fed. R.Civ.P. 37.

(Memorandum Endorsement dated 8/13/96).

Amcash responded to the August 13th order with unsigned responses, but it produced no documents. A conference was held on October 3, 1996. As my notes of the conference confirm, I orally ordered Amcash to produce "all responsive documents" by October 8, 1996. My notes confirm that I specifically warned Amcash that "if [plaintiffs] don't fully comply, I will enter a default judgment."

Amcash produced some, but not all, responsive documents by the October 8th deadline. It produced additional documents on December 23, 1996 and January 3, 1997, but it failed to produce certain broad categories of documents specifically requested by AT & T, such as financial records relating to Amcash's profitability, which were relevant to the issue of Amcash's alleged damages. Amcash also failed to provide complete interrogatory answers and to produce any deposition witnesses.

As a consequence, AT & T made its first motion for sanctions, requesting a default judgment and attorneys' fees and costs. Following a conference on January 10, 1997, I issued a written order on January 13, 1997, which provided in part as follows:

> AT & T's request for the entry of a default judgment is denied; I find, however, that plaintiffs have failed to comply with two of my prior discovery orders; I decline to enter a default judgment at this time, even though I believe that plaintiffs' conduct may warrant such relief, because of the hardship that would result from the entry of a hundred million dollar default judgment; I will, however, award costs to AT & T; and plaintiffs are cautioned that if they do not comply with this order, in view of their prior failures to comply with my orders, I will enter a default judgment.

(Order dated January 13, 1997). I ordered Amcash to produce six categories of documents that AT & T had requested but that Amcash had failed to produce. I also ordered Amcash to produce for deposition witnesses who had previously been noticed for deposition by AT & T. By order dated June 5, 1997, I ordered Amcash to pay AT & T $7,500 in fees and costs incurred in filing the first sanctions motion. Although I accepted the representations of AT & T's counsel that it had spent in excess of $20,000 in time bringing the motion, I exercised my discretion to award only $7,500.

Amcash never paid the $7,500 as ordered. It did produce four witnesses for deposition. It also produced, on January 30, 1997, additional documents. These documents made it clear that Amcash had failed to produce other documents, for there were gaps in the records and certain documents appeared to be drafts for which no finals were produced. For example, Amcash produced tax returns for 1992 and 1993, but not for any other years. It produced only limited banking records. The depositions also revealed that many documents were missing from Amcash's document productions. By letter dated March 31, 1997, counsel for AT & T listed for counsel for Amcash the documents and

categories of documents that AT & T had requested but Amcash had failed to produce. There were fifteen categories of documents and thirty-nine specific documents or sets of documents identified during the depositions.

On April 8, 1997, Amcash produced an additional 255 pages of documents and one computer diskette. These documents should have been produced many months earlier, and certainly no later than January 31, 1997, as required by the January 13th order. The document production was still incomplete.

AT & T took the deposition of Vicki Zakaria, the General Manager of American Cash Card Corp. until the end of 1996, on March 31, 1997 and June 18, 1997 as a non-party witness. Her testimony demonstrated that Amcash did not make a good faith effort to comply with this Court's discovery orders. For example, Zakaria testified that she was not given any instructions by any lawyers about the production of documents in this case until August 16, 1996—*after* my August 13th order. She also testified that she did not search her computer files, although she had raw data and diskettes relating to AT & T.

On March 31, 1997, Zakaria produced at her deposition 924 pages of documents and twenty computer diskettes. Most of this material was responsive to AT & T's requests and should have been produced months earlier. She also testified that she had additional Amcash documents at her home that she had never produced, documents that she had asked Amcash to retrieve but that Amcash had failed to retrieve. Hence, these documents had not been produced.

At the time AT & T filed the instant, or second, motion for sanctions, Amcash still had not produced certain documents, including, for example, complete financial records, Amcash's bills to customers for the period July through December 1995, and, with certain limited exceptions, documents relating to the issue of piercing the corporate veil.

By letter dated January 8, 1998, counsel for AT & T wrote the Court advising that Amcash still had not paid the $7,500 in sanctions imposed in the Court's June 5, 1997 order and asking that the Court hold Amcash in contempt. I issued an order on January 12, 1998 ordering Amcash to pay the $7,500 to AT & T by January 31, 1998. I specifically warned Amcash that if it failed to do so, I would hold it in contempt and impose appropriate sanctions, including judgment by default.

By letter dated January 21, 1998, counsel for Amcash submitted a letter requesting a "protective order" based on Amcash's purported "inability to pay the awarded amount of $7,500." Amcash submitted a declaration signed by Victor Alves declaring that American Cash Card Corp. lacked the ability to pay the sanctions, and that: "Cash on hand for myself and Amcash, combined in June 1997 was $287.43. Cash on hand for myself and Amcash, combined is still at a minimal figure today." (Victor Alves Decl. ¶ 3).

AT & T counsel responded by letter dated January 26, 1998. AT & T demonstrated that Amcash's own records showed that it earned net income in excess of $2 million for the period December 1994 through November 1995 and that it had substantial assets as late as the fall of 1996.

On January 30, 1998, Amcash submitted to AT & T counsel a check for a small part of the $7,500.[1] No additional payments on account of the $7,500 in sanctions have been made.

By letter dated June 24, 1998, AT & T counsel advised the Court that it had learned that a plaintiff in an unrelated action had obtained a default judgment against American Cash Card Corp. and had been able to execute that judgment against $14,607.42 in a Merrill Lynch account held by American Cash Card Corp. Hence, it appears that Amcash's representations in January 1998 that it had insufficient assets to pay the $7,500 in sanctions were false. Amcash did not respond to the June 24th letter.

---

1. The check was written out for "SEVEN HUNDRED & 00/100 DOLLARS" in words and for "$750.00" in numerals.

## DISCUSSION

Rule 37 of the Federal Rules of Civil Procedure provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... (C) An order striking out pleadings or parts thereof, ... or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed.R.Civ.P. 37(b)(2). As the Second Circuit has recognized, "[a]lthough entry of a default judgment is an extreme measure, discovery orders are meant to be followed." *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir.1995); *see National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir.1988) ("A party who flouts [discovery] orders does so at his peril."); *see also Sieck v. Russo*, 869 F.2d 131 (2d Cir.1989) (affirming entry of $1 million default judgment against defendant for repeatedly failing to appear for scheduled depositions).

In considering whether to impose the "litigation-ending sanction" of a default judgment for discovery abuse, courts have considered the following factors: (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party. *See* Jodi Golinsky, *The Second Circuit's Imposition of Litigation–Ending Sanctions for Failures to Comply with Discovery Orders*, 62 Brook. L.Rev. 585, 596–97 (1996). Courts must also consider competing policy considerations: the need for general deterrence and docket control versus the preference for resolving cases on their merits. *See, e.g., National Hockey League*, 427 U.S. at 643, 96 S.Ct. 2778; *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir.1993) (district courts must consider, *inter alia*, public's interest in expeditious resolution of litigation, court's need to manage its docket, and preference for disposing of cases on their merits); *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[I]n this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where ... they are clearly warranted.").

■ In the instant case, the extreme measure of a default judgment is required. Amcash has failed to obey not one but *five* orders: the August 13, 1996 memorandum endorsement; the October 3, 1996 oral order; the January 13, 1997 written order; the June 5, 1997 order imposing sanctions in the amount of $7,500; and the January 12, 1998 order requiring Amcash to pay the sanctions by January 31, 1998.

■ In addition, Amcash's disobedience was willful, as demonstrated by: its repeated failure to comply with the Court's orders; its failure to produce such basic documents as checking statements, financial records, and tax returns; Zakaria's testimony that she was not asked, even though she was Amcash's general manager at the time, to look for responsive documents until August 16, 1996; her testimony that her requests to Amcash to retrieve documents from her home were ignored; Amcash's belated production of certain documents; and its misrepresentation of its ability to pay the $7,500 in sanctions. Nor do I accept Amcash's representations that it did not have the financial ability to pay the $7,500 in sanctions; to the contrary, I am convinced that it willfully refused to pay the full sum. Even assuming that Amcash did not act willfully, its failure to comply with the Court's numerous discovery orders was at least grossly negligent, and gross negligence may provide a basis for holding a noncompliant party in default. *See Cine Forty–Second Street*, 602 F.2d at 1068 ("[W]here gross professional negligence has

been found—that is, where counsel clearly should have understood his duty to the court—the full range of sanctions may be marshalled.").

Nor will any lesser sanction suffice. I denied AT & T's first request for a default judgment, as I opted instead for a lesser sanction: an order compelling discovery and the imposition of fees and costs. Not only did Amcash fail to comply with the discovery order, it only paid some $700 of the fees and costs. Indeed, I warned Amcash *four* times that I would impose sanctions, including a default judgment, if it did not comply. Those warnings went unheeded.

Moreover, it is clear that Amcash itself is responsible, at least in part, for its failings in discovery. The fault cannot be placed exclusively on counsel. Rather, the principals were clearly involved in the discovery process and, indeed, they attended several of the pretrial conferences.

Finally, AT & T has been prejudiced. It has had to devote extensive time and resources to trying to obtain the most basic discovery and the case has been delayed.

Amcash's principal response to AT & T's motion is that its has "clearly complied with this Court's order," and that it has made a "diligent search for all responsive documents." (Amcash Mem. at 6). I do not accept the arguments.

First, there was not one but five orders. Some documents were produced, but many months after they should have been produced. No explanation has been offered for the delays, and Amcash did not "clearly comply" with any of the orders.

Second, there remain significant gaps in the records produced. Although unaudited, apparently draft financial statements were produced, the underlying financial records have not been produced. Moreover, in contending that AT & T has subpoenaed financial institutions for its banking records, Amcash essentially concedes that it has not itself produced all its responsive banking records. In addition, while Amcash contends that it produced its "major customer's bill" and certain TSI bills (Amcash Mem. at 8), these appear to be recently generated bills. Amcash has not produced its bills sent to customers during the period when AT & T was still providing Amcash with service. Although these bills are highly relevant and some have been obtained from Zakaria and TSI, they have not been produced by Amcash itself. Amcash neither disputes these facts nor purports to offer an explanation as to why it failed to produce the bills. Likewise, Amcash has failed to produce many of its AT & T bills and service orders. While AT & T presumably has its own copies, it is entitled to the production of the originals that were sent to Amcash and documents generated by Amcash as a result. (*See generally* Sacksteder Reply Aff. ¶¶ 5–7). Hence, despite the passage of many months, the issuance of repeated Court orders, and two sanctions motions, Amcash still has failed to produce critical documents.

On balance, extreme measures are called for in this case. Amcash has flouted its obligations, and it is clear it will continue to do so. Accordingly, AT & T's motion for sanctions and the entry of a default judgment against Amcash for its continuing failure to comply with the Court's discovery orders is granted.

### CONCLUSION

AT & T's motion for sanctions is granted and judgment will be entered against Amcash by default. Amcash's verified complaint is dismissed, with prejudice. Amcash's defenses to AT & T's counterclaims are stricken. Further proceedings will be conducted to set AT & T's damages on its counterclaims. Counsel for the parties shall appear for a pretrial conference on March 5, 1999 at 4:30 p.m. in Courtroom 11A at 500 Pearl Street.

SO ORDERED.