Ronald DAVIDSON, Plaintiff,

v.

M. DEAN, Bruce Farrell, Roger Hyman, James Shope, Frederick Duncan and Thomas Coughlin, Defendants.

No. 97 Civ. 0202(VM).

United States District Court, S.D. New York.

Nov. 13, 2001.

Wayne A. Cross, Dewey Ballantine, New York City, Ronald Davidson, Wende Correctional Facility, Alden, NY, for Ronald Davidson, plaintiff, pro se.

Judith I. Ratner, The Capitol, Litigation Bureau, Department of Law, Albany, NY, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Ronald Davidson ("Davidson"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this case in this District in 1985 seeking damages and other relief against the individual defendants, who at the relevant times served as officials of DOCS. Magistrate Judge Henry Pitman, to whom this Court referred the action for supervision of pretrial proceedings and related matters, issued a Report and Recommendation, dated September 25, 2001 (the "Report"), recommending that this action be dismissed with prejudice. The Report is incorporated and attached hereto as Exhibit A. Davidson filed Objections dated 19 October 2001.

The Court has considered the issues raised in Davidson's complaint and other submissions relevant to this action, Magistrate Judge Pitman's analysis and conclusions pertinent to each of the issues he raises as grounds for dismissal and authorities discussed in the Report. The Court also reviewed Davidson's Objections and other documents cited therein or filed therewith. Based on the foregoing evaluation, the Court finds that Davidson has offered no persuasive response in his Objections to preclude dismissal on the grounds cited by Magistrate Judge Pitman. In examining the record and the law pertinent to the issues herein, the Court concludes that there is a sufficient basis to support the Magistrate Judge's recommendations and that the principles and authorities relied upon by Magistrate Judge Pitman in recommending dismissal of the action are controlling and sufficient to dispose of each Davidson's arguments. The Court is persuaded that Magistrate Judge Pitman's recommendation is appropriate and accepts and adopts the Report in its entirety.

Accordingly, it is hereby

**ORDERED** that the action is dismissed with prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

PITMAN, United States Magistrate Judge.

#### I. *Introduction*

Defendants move for an Order pursuant to Rule 37(b)(2)(C) dismissing this action with prejudice and awarding attorney's fees or, in the alternative, precluding plaintiff from offering any evidence of mental suffering, emotional distress or any other similar non-physical injury, and awarding attorney's fees. For the reasons set forth below, I respectfully recommend that the action be dismissed with prejudice.

#### II. *Facts*

This action has a long and tortured history; a brief review of this history is appropriate to put the current dispute in context.

This action was originally commenced in this District in 1985. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), seeks damages and injunctive relief as a result of allegedly illegal strip searches performed on him by DOCS personnel. Plaintiff's claims allegedly arise under various provisions of the United States Constitution and a consent decree entered in this District in a matter entitled *Hurley v. Coughlin,* 77 Civ. 3847(RLC) (S.D.N.Y.).

In December 1987, the matter was transferred to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

The United States District Court for the Northern District of New York granted defendants' motion for judgment on the pleadings and dismissed plaintiff's Eighth Amendment claim in 1993. In 1995, the Northern District dismissed plaintiff's claim under the *Hurley* consent decree for lack of jurisdiction, finding that this Court had exclusive jurisdiction to enforce the consent decree. The Court declined to address a then-pending motion by plaintiff to amend his complaint to add a claim under the Fourth Amendment.

In 1996, the United States Court of Appeals for the Second Circuit vacated the Northern District's 1993 and 1995 decisions, concluding that the transfer to the Northern District was an abuse of discretion. *Davidson v. Dean,* 104 F.3d 350 (2d Cir.1996) (Table), *opinion available at* 1996 WL 534089. The Court of Appeals ordered that the matter be immediately re-transferred back to the Southern District of New York for further proceedings.

After the matter was re-transferred to the Southern District, it was referred to the undersigned for general pretrial supervision and to report and recommend concerning dispositive motions. On September 27, 1997, I granted plaintiff's application to have his case added to the list of cases circulated to

the Court's Pro Bono Panel and stayed proceedings until December 15, 1997 to allow members of the Panel to consider volunteering to represent plaintiff. With the consent of plaintiff and counsel for defendants, the stay was subsequently extended to April 1, 1998.

Counsel for plaintiff entered the case in August 1998, and I issued an Order on August 31, 1998 directing, among other things, that all remaining discovery[1] be completed by June 30, 1999. In June 1999, I approved the parties' stipulation extending the period within which discovery was to be completed to September 30, 1999.

In August 1999, I approved a second stipulation submitted by the parties, extending the time to complete discovery to October 29, 1999.

In November 1999, I approved a third stipulation submitted by the parties, extending the time to complete discovery to December 31, 1999.

In January 2000, I approved a fourth stipulation submitted by the parties, now extending the period within which discovery was to be completed to February 29, 2000. I endorsed this stipulation with the limitation that no further extensions would be granted except for good cause shown by affidavit.

In late November 1999, defendants sought a release concerning plaintiff's mental health records. Plaintiff executed a release for 1983 and 1984 but refused to consent to the release of mental health records for prior or subsequent periods. I addressed the issue of plaintiff's mental health records during a conference held on March 10, 2000 and ordered that plaintiff advise defendants no later than March 24, 2000 whether he is seeking damages for any mental anguish or psychological damages for the period after December 1984, and, if so, to provide a release for all pertinent medical records. I further ordered that plaintiff provide a release for all records concerning his mental health for the period from the commencement of his custodial status through December 1984 and that plaintiff make himself available for deposition no later than April 14, 2000.[2] To date, the only release plaintiff has provided is a release for his mental health records from the date he was remanded to DOCS custody through December 1984.

Plaintiff subsequently sought reconsideration of my March 10 Order. Reconsideration was denied in an Opinion and Order dated June 15, 2000. In a subsequent Order dated July 21, 2000, I denied plaintiff's application for sanctions based on plaintiff's failure to execute the releases as previously ordered and directed plaintiff to provide a release for all mental health records for the period from January 1972 through December 31, 1984.[3]

Despite the fact that plaintiff was receiving outstanding representation from Mr. Kenneth Friedman, a member of the Court's *Pro Bono* Panel, plaintiff filed *pro se* objections to my discovery rulings in August 2000. By Order dated October 4, 2000, the Honorable Victor Marrero, United States District Judge, affirmed my Orders of March 28, 2000, June 15, 2000, June 26, 2000 and July 21, 2000. The Court went on to direct that upon resolution of the issue of plaintiff's representation, Davidson's deposition was to proceed promptly thereafter. Plaintiff's *pro bono* counsel, Mr. Friedman, was relieved at plaintiff's request on October 26, 2000.

Notwithstanding his defeats both before me and before Judge Marrero, and notwithstanding both my Orders and Judge Marrero's Orders, plaintiff continues to refuse to execute a release for his mental health records for the period from the commencement of his custodial status in 1972 through 1984,

---

1. Some discovery had been conducted while the case was pending in the Northern District.

2. My oral Order of March 10 was subsequently memorialized in a written Order dated March 30, 2001.

3. My March 10 Order did not specify the start date of the period for which mental health records were to be released, and the parties differed as to whether the start date should be the commencement of plaintiff's custodial status or the date on which he was remanded to DOCS custody. This issue was clarified in my July 21 Order. Because my March 10 Order was unclear in this regard, I declined to impose any sanctions at that time.

and has failed either to make an election with respect to mental distress damages for the time period after December 1984 or provide a release for the mental health records relevant to this period. In his submissions in response to the pending motion, plaintiff suggests that he would consider releasing such material only after he, or his new attorney, has an opportunity to review such material.

In addition, defendants served a notice of deposition on plaintiff on January 10, 2001 seeking to take his deposition on January 24, 2001. Despite the fact that I had previously ordered plaintiff to make himself available for a deposition and despite the fact that this Order was affirmed by Judge Marrero, plaintiff failed to appear for the deposition and sent my chambers a letter objecting to the deposition, claiming that he had received only eight-days notice of the deposition and that such notice was insufficient.

### III. Analysis

Fed.R.Civ.P. 37(b)(2) provides that "[i]f a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just," including an order that certain facts be deemed established, an order precluding the offending party from offering "designated matters" in evidence or an order dismissing the complaint or directing the entry of a default judgment. The court has broad discretion in determining whether Rule 37 sanctions are appropriate, and, if so, what sanction should be imposed. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2284 at 614 (2d ed. 1994) ("With a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with regard to sanctions.").

■ Courts have considered a number of factors in determining what sanction, if any, is appropriate where a party has failed to comply with a Court Order directing discovery. When a litigation-ending sanction is sought, these factors include (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the

non-compliant party had been warned of the consequences of his non-compliance. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852–54 (2d Cir.1995); *Yucyco, Ltd. v. Ljubljanska Banka d.d.*, 96 Civ. 4274(DC), 2001 WL 699135 at *4 (S.D.N.Y. June 20, 2001), *citing American Cash Card Corp. v. AT & T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999), *aff'd mem.*, 210 F.3d 354 (2d Cir.2000). "Although entry of a [litigation-ending order] is an extreme measure, discovery orders are meant to be followed. 'A party who flouts such orders does so at his peril.'" *Bambu Sales, Inc. v. Ozak Trading Inc., supra,* 58 F.3d at 853, *citing Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir.1988). *See also Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 5 (2d Cir.1997) ("This Court does not hesitate to affirm the dismissal of claims as a sanction for 'willfulness, bad faith, or any fault' on the part of the sanctioned party."). Compliance with discovery orders is "'necessary to the integrity of our judicial process.'" *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir.1991), *quoting Update Art, Inc. v. Modiin Publ'g, Ltd., supra,* 843 F.2d at 73.

■ In this case, all the relevant factors indicate that the appropriate sanction is dismissal of plaintiff's claims with prejudice.

■ First, plaintiff's non-compliance with the discovery Orders is willful. "Non-compliance with discovery orders is considered wilful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davis v. Artuz*, 96 Civ. 7699(GBD), 2001 WL 50887 at *3 (S.D.N.Y. Jan. 19, 2001), *citing Baba v. Japan Travel Bureau, Int'l, Inc.*, 165 F.R.D. 398, 402–03 (S.D.N.Y.1996), *aff'd*, 111 F.3d 2 (2d Cir.1997). Plaintiff here makes no claim that he did not understand the discovery Orders; indeed, given the fact that the issues were litigated before both the undersigned and Judge Marrero, plaintiff had more than ample opportunity to resolve any ambiguity that may have existed. The only explanations plaintiff proffers for his failure to execute releases for the mental health records are that the release forms proffered

by defendants would not have been accepted by the New York State Office of Mental Health ("OMH") which has possession of plaintiff's records and that he would consider releasing the records after he first reviews them. Plaintiff makes no claim that the release forms proffered to him were improperly broad or would have released information outside the scope of the court's Order. As to the former excuse, plaintiff has no basis for his knowledge, and, in any event, after the court's Orders directing execution of the releases, plaintiff was obligated to exercise all reasonable diligence to comply with the Orders; whether OMH would accept the release or not is irrelevant to plaintiff's obligation to comply with the Orders. Similarly, with respect to plaintiff's second excuse, plaintiff lost the option of pre-screening the documents once the Court entered its Orders directing execution of the releases and the making of an election with respect to post–1984 damages.

With respect to plaintiff's refusal to be deposed, the only explanation he offers is that he received the notice only eight days before the scheduled deposition and did not have sufficient time to prepare. Neither the Federal Rules of Civil Procedure nor the Rules of this Court require any specific minimum notice period; all that is required is that the notice be reasonable under the circumstances. 2 Michael C. Silberberg, *Civil Practice in the Southern District of New York*, § 17.08 at 17–24 (2d ed.2001). Eight days' notice is not unreasonable as a matter of law. *F.A.A v. Landy*, 705 F.2d 624, 634–35 (2d Cir.1983) (four days' notice of deposition found reasonable); *Jones v. United States*, 720 F.Supp. 355, 366 (S.D.N.Y.1989) (eight days' notice found to be reasonable). I do not mean to suggest that eight days' notice is invariably reasonable notice; the reasonableness of notice must be determined in light of the facts and circumstances of the individual case. However, plaintiff provides no specific explanation why this interval did not allow sufficient time for preparation, and, given plaintiff's status—an incarcerated inmate—it is unlikely that he had conflicting demands on his time. In any event, plaintiff makes no claim that he had scheduling conflicts that prevented him from preparing for his deposition. Without some explanation of why eight days was insufficient, this contention is unconvincing.[4]

■ Second, it is unlikely that any lesser sanction will be effective to deter plaintiff from engaging similar conduct or to deter litigants in general from engaging in improper dilatory behavior. Plaintiff is an incarcerated inmate who has no substantial funds; plaintiff's poverty is confirmed by the fact that he qualified to have his case considered by the Court's *Pro Bono* panel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir.1989) (party's financial ability to retain counsel is relevant to the issue of whether his case should be submitted to the *Pro Bono* Panel). Thus, a financial sanction would be uncollectible and is, therefore, meaningless in this case.

I have also considered whether an Order precluding plaintiff from offering any evidence concerning any claim of mental anguish or similar non-physical suffering would be sufficient. If plaintiff's failure to comply with the court's Orders were limited to his refusal to execute releases for his mental health records, such a sanction would probably be appropriate. Plaintiff's misconduct, however, goes beyond his refusal to execute a release for mental health records and extends to his failure to be deposed concerning any aspect of his case. Since the failure to comply with discovery Orders goes beyond a single damage issue, a sanction limited to damages issues would be substantially narrower than plaintiff's misconduct. Plaintiff's obstinate conduct has impaired discovery concerning every aspect of liability and dam-

---

4. Plaintiff makes a vague claim that he needed more than eight days to prepare for the deposition because he needed to review documents that were in his counsel's possession. He does not specify what documents he needed nor does he explain why he did not begin to prepare himself for his deposition when the Orders directing his deposition were entered. Moreover, since the case arises out of incidents—allegedly illegal strip searches—which would not appear to generate a substantial "paper trail," it is entirely unclear that there were any documents that plaintiff had to review to prepare for his deposition.

ages, and the sanction should be equally as broad.

■ Third, the length of plaintiff's non-compliance is substantial. Any issue plaintiff may have had concerning the propriety of the discovery Orders was resolved when Judge Marrero affirmed the Orders on October 4, 2000. Plaintiff's obstructive conduct continues to this day—almost one year later. The length of this delay takes on added significance given the age of this action. This action is now more than one and one-half *decades* old. Without doubt, plaintiff is not responsible for much of the delay in bringing this matter to resolution. Nevertheless, plaintiff's ongoing refusal to comply with the discovery Order in issue—which continues to this day—implies a lack of interest in resolving this matter on the merits and suggests that plaintiff has commenced and prosecuted this action for some other reason.

■ Finally, plaintiff had adequate notice that he faced sanctions, including the possibility of dismissal, if he failed to comply with the discovery Orders. As a threshold matter, although the presence or absence of a warning concerning sanctions is relevant in determining what sanction should be imposed, *Baba v. Japan Travel Bureau Int'l, Inc., supra,* 111 F.3d at 5, and is particularly important where the non-compliant party is proceeding *pro se, Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994), an express warning that the complaint will be dismissed if a discovery order is ignored is not an "absolute condition precedent" to a dismissal under Rule 37(b)(2).

Although formal warnings often precede the imposition of serious sanctions, this court has never considered warning an absolute condition precedent. On the contrary, as indicated *supra,* we have examined the record to ascertain if the party's disregard of court ordered discovery justified the sanctions imposed by the district court. We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that, as we hold *supra,* such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril.

*Daval Steel Prods. v. M/V Fakredine, supra,* 951 F.2d at 1366.

There are numerous facts in this case which demonstrate that plaintiff knew that he ran the risk of a litigation-ending sanction if the discovery Orders were ignored. Plaintiff is not an unskilled *pro se* litigant. The Court of Appeals has noted that plaintiff "is an extremely litigious inmate who is quite familiar with the legal system.... Indeed, the plaintiff at one point had at least 30 simultaneously pending suits." *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (denying plaintiff's pro se complaint the lenient treatment afforded to ordinary *pro se* litigants).[5] In the course of his prior litigations, plaintiff has affirmatively sought litigation-ending sanctions pursuant to Rule 37 for alleged discovery failures by defendants. For example, in *Davidson v. Scully,* 83 Civ.2025(MJL), 1998 WL 24359 at *1 (S.D.N.Y. Jan. 22, 1998), plaintiff sought to have the defendants' answer stricken and a default judgment entered as a result of defendants' alleged failure to produce documents and witnesses. Similarly, in *Davidson v. Lepak,* 95 Civ. 8860(BSJ)(MHD) (S.D.N.Y. March 22, 1999), plaintiff sought to strike defendant's answer, apparently for discovery defaults, against other defendants for discovery violations. Thus, notwithstanding his *pro se* status, at all relevant times, plaintiff had actual knowledge that the potential consequences of disobeying a discovery Order included dismissal of his claims.

Second, plaintiff was represented by counsel from August 1998 through October 26, 2000—the period in which all the discovery

---

**5.** The late Honorable Mary Johnson Lowe, United States District Judge, described plaintiff as "'an exceptionally able pro se litigant who, through his numerous submissions, has clearly demonstrated his ability to gather the facts and deal with the issues if unassisted by counsel.'" *Davidson v. Scully,* 83 Civ.2025(JSM), 2000 WL 9512 at *1 (S.D.N.Y. Jan. 6, 2000) (inner quotation marks and citations omitted).

Orders in issue were entered. Thus, in addition to his own extensive litigation experience, plaintiff had the benefit of counsel during the period in which the underlying discovery orders were issued.

Third, the instant motion was preceded by a letter from defendants' counsel dated November 30, 2000 in which defendants' counsel stated her intention to move for sanctions pursuant to Rule 37(b)(2) striking plaintiff's claim for emotional distress damages as a result of plaintiff's refusal to execute a release for mental health records. Thus, plaintiff had actual knowledge as of early December 2000 that a motion for sanctions would be made if plaintiff persisted in disobeying the court's discovery Orders. Despite this actual knowledge, plaintiff's disobedience persisted.

Admittedly, there was no express warning from the Court to plaintiff that his continued recalcitrance could result in he entry of an Order dismissing his action. However, given plaintiff's experience, the extensive period of time in which he was represented by counsel and the advance notice he received of the nature of the instant motion, plaintiff clearly had actual knowledge that he risked a litigation ending sanction.

 Plaintiff offers no colorable opposition to the pending motion. Among other things, plaintiff's opposition papers make apparently baseless personal attacks on plaintiff's counsel, cite the fact that one of the defendants has been convicted of criminal charges unrelated to the instant action, cite the fact that he consented to the release of his mental health records in an unrelated case for a period substantially more limited than that at issue here, criticizes an another Assistant Attorney General for his conduct at a deposition unrelated to this matter, complains about various medical problems he had after the date on which his deposition was noticed and criticizes state agencies for their alleged lack of response to prisoners' requests for documents and information. None of these matters have any bearing on plaintiff's obligation to comply with the Court's discovery Orders in this case.

Plaintiff also claims that the imposition of sanctions is inappropriate because, according to plaintiff, his former counsel and counsel for the defendants had an agreement under which plaintiff or his counsel would review plaintiff's mental health records before they were produced to defendants' counsel. Plaintiff offers no letter or affidavit from his former counsel corroborating the existence of such an agreement nor does he offer any documentary evidence that even circumstantially corroborates such an agreement. In any event, even if such an agreement did exist, it does not excuse plaintiff's obligation to comply with the Court's discovery Orders. Although litigants can seek to have the Court amend a prior Order on consent or for changed circumstances, they cannot, by themselves, vacate a Court Order. Indeed, if the rule were otherwise, any Court Order would merely be a point of departure for further discussions between the parties; scheduling Orders would be meaningless because the parties would have *carte blanche* to amend them at will.

 The law is clear in this Circuit that "discovery orders are meant to be followed." *Bambu Sales, Inc. v. Ozak Trading Inc.*, *supra*, 58 F.3d at 853. Once the discovery Orders in this case were issued, plaintiff had two choices—to comply with the Orders or to appeal. Plaintiff did appeal the Orders and lost. Plaintiff's only choice at that point was to comply with the Orders, and only the Court—not his adversary—could excuse him from that obligation.

 Since every relevant factor indicates that the sanction of dismissal is appropriate and plaintiff has offered no colorable excuse for his recalcitrant conduct, plaintiff's claims should be dismissed with prejudice. I also decline to recommend the assessment of attorney's fees. Plaintiff was convicted in 1976 of three counts of murder in the second degree and is serving a sentence of twenty-five years to life. It is questionable whether plaintiff will ever be released. Given plaintiff's poverty and the very substantial possibility that he will spend the remainder of his life in prison, an Order assessing attorney's fees would have no practical effect on either party.

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I respectfully recommend that defendants' motion be granted to the extent it seeks dismissal of the complaint, with prejudice. I further recommend that defendants' motion be denied to the extent it seeks attorney's fees.

V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, United States District Judge, Room 414, 40 Centre Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Marrero. FAILURE TO OBJECT WITHIN TEN (10) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237 & n. 2 (2d Cir.1983).

Dated: Sept. 25, 2001.